SCHOTT, Chief Judge.
We grant certiorari in order to review the trial court’s denial of relator’s application for post conviction relief. Relator was convicted of second degree murder in violation of R.S. 14:30.1 and he was sentenced to serve life imprisonment. This court affirmed the conviction and sentence. State v. Grant, 531 So.2d 1121 (La.App. 4th Cir. 1988), writ den. 567 So.2d 1117 (La.1990).
In that opinion the court summarized the pertinent facts supporting relator’s conviction.
On application for post conviction relief, relator raises two claims: (1) that the trial court committed reversible error in giving an erroneous jury charge on reasonable doubt; and (2) that he was denied effective assistance of counsel because trial counsel twice failed to move for a mistrial when the prosecutor made impermissible references to other crimes, namely relator’s alleged drug use.
First, relator argues that the jury instruction on reasonable doubt was erroneous under the standard enunciated in Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). Cage announced a new rule of law and cannot be applied retroactively. Skelton v. Whitley, 950 F.2d 1037 (5th Cir.1992). Since the relator asserts that the erroneous jury charge was similar to that in Cage, his claim is without merit and is denied.
Secondly, relator argues that he was denied effective assistance of counsel at trial when counsel twice failed to state objections or move for a mistrial when the State made impermissible references to other crimes evidence. Upon motion of defendant, Article 770(2) mandates the granting of a mistrial, if the district attorney refers directly or indirectly to “another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.” If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to
disregard the remark or comment but shall not declare a mistrial.
On direct appeal relator had claimed that the trial court committed reversible error because it failed to order a mistrial when the prosecutor made impermissible references to the relator’s use of cocaine during cross examination of a defense witness, Vera Coleman.
Q. He had gotten fired from south Central Bell because of his cocaine use, right?
BY MR. WOODS:
Oh, Judge, Objection.
BY THE COURT:
Why are you laughing, Mr. Woods. I don’t think you need to laugh.
BY MR. WOODS:
I don’t think it’s funny at all Judge. I think it’s highly improper, and I’d like to make a motion outside the presence of the Jury.
BY THE COURT:
Okay, please come into my chambers. * * * * * *
BY THE COURT:
For the record, there was a comment made in the last answer and question that I wish the Jury to disregard, and to put it out of your mind. Please act as if it had never been said.
On direct appeal, this court concluded that on the record “counsel’s objection was sustained and he was granted his request for an admonition to disregard [the drug use reference.] There is no indication that he requested and was denied a mistrial; the court apparently granted his request. Defendant cannot now on appeal complain of any alleged error.” Grant, at page 1123.
In his application for post conviction relief now under review, relator presents the same argument within the context of an ineffective assistance of counsel claim. The standard of review for a sixth amendment ineffective of counsel claim requires that relator affirmatively show that counsel’s performance was deficient and that but for counsel’s unprofessional errors the result of the proceeding would have been *346 different. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The crux of relator’s argument is that counsel’s deficiency in the performance of his duty consisted in his failure to move for a mistrial and but for this failure the result would have been a mandatory mistrial pursuant to C.Cr.P. art. 770, a different result than the one which he obtained.
This argument flies in the face of art. 770 which provides a defendant with the option of moving for a mistrial or requesting only that an admonition be given. It can hardly be said that requesting an admonition rather than moving for a mistrial when there has been an impermissible reference to another crime constitutes ineffective assistance of counsel in every case as a matter of law because there may be a variety of valid practical reasons why counsel does not want to abort the trial and start all over from the beginning. The decision to ask for the admonition in the present case involved trial tactics and was a reasonable judgment by counsel in the trial setting. It was not a deficiency in his representation of defendant or even an error on his part.
Based upon the reasoning of the court when defendant’s direct appeal was considered we are convinced that counsel did not move for a mistrial, but elected to move for an admonition which was given by the trial judge. However, we are referred to an entry in the docket master for June 10, 1987, which reflects that a motion for mistrial was denied by the court along with two minute entries which also report the denial in chambers of defense counsel’s motion for mistrial. These secondary entries of an event that transpired in chambers and which was not contemporaneously transcribed do not alter the facts that when the judge emerged from chambers she admonished the jury and there is no recorded objection or affirmative request on the record for a mistrial. Even if a motion for a mistrial was mentioned and discussed in chambers the record makes it clear that following that conference counsel was satisfied with the admonition. Since this was a perfectly legitimate and appropriate option provided by art. 770 counsel’s election of that option cannot be considered as deficient representation of defendant.
The second alleged impermissible reference to other crimes to which relator objects occurred during cross examination of relator.
Q: Could it be, Mr. Darcel Grant, that you know about cocaine not from Constance’s use but from your own personal experience?
A: I never use cocaine.
Q: Could it be that cocaine was part of the problem or part of the reasons why you were fired from South Central Bell? You were missing work because you couldn’t get up because you were too doped up with cocaine?
A: That’s not true.
BY MR. ASHLEY:
Judge, I renew my objection and my motion.
BY THE COURT:
And it’s denied.
This colloquy must be considered in the light of the direct examination of the defendant in which he portrayed himself as one who was knowledgeable about the evils of cocaine and was intent upon saving his wife and children from it. Examples of this testimony are as follows:
Q. This was the morning after Halloween?
A. Yes, the morning after.
Q. Okay. You wake up at 6:30 and what happens?
A. I go in the front room, and Connie was there and everybody was sitting up there freebasing.
Q. What do you mean by freebasing? A. Cocaine. To me, it’s smoking cocaine in a pipe form.
Q. In a pipe?
A. Right.
Q. And who was doing this?
A. At the moment, Laurietta was doing it then.
Q. Laurietta?
A. Right.
Q. The Laurietta that testified earlier?
*347 A. Correct. When I came out of the kitchen, Connie and them was freebasing there.
Q. Connie was doing this too?
A. Correct. And then she told Lauriet-ta that when she got through, then she would taker her home, because Laurietta didn’t have a ear. So I knew, obvious, either Tyler must have brought her there, or some other way. I don’t know how she got there.
Q. Listen. When they were in there freebasing, did you do any of that stuff? A. No.
Q. What happened next?
A. Well, Connie brought Laurietta home, and when she came home, we talked about it, and I told her she should try to quit, and she said it would take time for her to quit. As long as she was being around Laurietta her sister, Adora, that she would never quit.
Q. Is this the first time you had talked to her about freebasing?
A. No, we talked about it several times. Q. You all talked about it prior to the Halloween incident?
A. Correct. On numerous times.
Q. And what would you tell her each time?
BY MR. WOODS:
Your Honor, I’m going to object.
BY THE COURT:
He can tell us what he said, but he cannot tell us what somebody else said.
BY MR. ASHLEY:
Q. What would you tell her on these occasions when you talked about freebasing?
A. Well, I was calling her a few names like Virginia Junkie, and I’d tell her to see what happened to several of our friends who had did cocaine, losing their households, whatever, your wives, breaking up, you know. You can’t quite combat it because it’s an addiction. It takes you down all the way.
Q. So how many occasions do you think you had these discussions with her prior to Halloween?
A. Connie been doing cocaine for about a year and a half or maybe 2 years, and prior to that, she was getting away from me with it, because you know, she was losing weight, she wouldn’t take care of the household, and neglecting her kids and things like that. A few times I threatened to take our daughter from her, and I heard her talk about her husband taking his kids too. She was constantly neglecting them all the time.
Q. So you had some discussions then about Mattia?
A. Correct
Q. What did you tell about Mattia?
A. I threatened to take the baby away from her.
Q. That you would take the baby away? A. Right Q. If?
A. If she didn’t stop taking cocaine_
* * * * * *
A. They never did open the door. So after that I goes downstairs. Before I goes to the front office, I’m going to call the police so I decided to open Connie’s hood up and pull a plug off.
Q. Why did you do that?
A. I did that because I didn’t want them to leave, because I wanted the police to come see what they were doing, the cocaine and leaving the children by themselves.
Returning to the questions on cross examination which relator contends constituted an impermissible reference to other crimes, the first question was whether relator’s knowledge of cocaine came not from Connie’s use “but from your own personal experience”. In the strict sense this was not a reference to a prior crime at all, but a legitimate follow up to the questions on direct examination. Once relator volunteered, “I never use cocaine” he opened the door to the next question about his use which was legitimate impeachment as to the previous answer. Consequently, there was no impermissible reference to a prior crime and there was no basis for a motion for a mistrial. Counsel did object and the trial court properly overruled the objection because the questions were proper.
*348 Although the questions on direct examination related to specific instances of drug use by the victim and relator testified that he did not participate on those occasions, the questions and answers opened the door for the prosecutor’s questioning on the subject of relator’s drug use. “When a witness has been intentionally sworn and has testified to any single fact in his examination in chief he may be cross-examined upon the whole case.” State v. Mistretta, 490 So.2d 462, 464 (La.App. 4th Cir.1986); and R.S. 15:280. R.S. 15:280 was repealed effective January, 1, 1989, and thus is applicable to this ease. This is especially true in light of the fact that the underlying basis of relator’s defense was that not only did he not use drugs, but he was in fact the victim of the murder victim’s drug use.
Accordingly, the judgment denying relator’s application for post conviction relief is affirmed.
AFFIRMED.
JONES, J., dissents with written reasons.