ARMSTRONG, Judge.
On May 4, 1990 the defendant, Gerald Lopinto, was charged with four counts of arson with intent to defraud. In count four of the bill, Frank Gilmore was also charged. On March 21, 1991 Gilmore pled guilty as charged and was sentenced to five years at hard labor, suspended, and placed on three years active probation with the special condition that he give two hundred hours of community service. On No *688 vember 12,1991 the defendant was tried on count four. The jury found him guilty as charged. On January 24, 1992 the trial court denied a motion for new trial and, after a waiver of the legal delay, sentenced the defendant to serve three years at hard labor. The other counts are not before this court in this appeal. The defendant now appeals raising five assignments of error. FACTS
About 4:00 a.m. on January 19, 1990, there was a fire on the property located at 2021-23 Conti Street. That lot contained two buildings, each of them containing two shotgun dwellings. The fire occurred at the building numbered 2021. Upon investigation, that structure showed various signs of arson. Those signs included a burn pattern throughout where gasoline had been poured, a gasoline can in the attic, a hole in the ceiling of the kitchen with a ladder through it leading up to the attic, a torn sheet doused with gasoline draped over the ladder to direct the fire up to the attic, and the fact that the windows had been boarded up on the inside to hide the flames until the fire was well on its way. The building at 2023 Conti showed many of the same preparations, but the fire was set only at 2021 Conti. The building did not burn completely because it was tightly sealed and the initial flashover caused by the large volume of gasoline burned up all the available oxygen.
The fire was investigated by Police Detective Harry Mendoza and Fire Department Investigators Mark Jee and Karl Pfis-ter. In the course of the investigation, Detective Mendoza learned that the property was purchased by Frank Gilmore in December of 1989. He also learned that there was a fire insurance policy on the property which showed the owner of the property to be Frank Gilmore and the mortgageholder to be Johnny Evans, later determined to be an alias of the defendant. Mendoza requested that neighbors notify him if Mr. Gilmore showed up on the property. On January 25, 1990 Detective Mendoza and Investigator Pfister met at the fire site after neighbors notified them that Mr. Gilmore was on the property. Gilmore was there discussing the fire with insurance company investigators.
After Gilmore finished his discussion with the insurance company investigators, the officers identified themselves, then told Gilmore they would like to speak to him about the fire. Gilmore agreed to go to the police station with Detective Mendoza. According to both Gilmore and Mendoza, on the way to the station Mendoza talked and Gilmore listened. Gilmore was not questioned at that point. He was advised of his Miranda rights upon arrival at Detective Mendoza’s office. Gilmore waived his rights, gave an oral statement, then signed a typed statement. The statement was entered into evidence, but not shown to the jury.
Prior to the defendant’s trial, Gilmore pled guilty as charged. Immediately prior to the defendant’s trial, in chambers, the court heard testimony from Gilmore that he did not want to testify. The court also heard argument from Robert Glass, Gilmore’s counsel for purposes of that issue only, relative to possible federal prosecution based on testimony Gilmore might give in the case. The trial court ordered Gilmore to testify, threatening him with contempt if he refused to do so.
At trial, Gilmore testified that he felt tricked into making his statement. However, he admitted that the statement was the truth. He further testified that he was involved with the defendant in a scheme to defraud an insurance company by purchasing a fire insurance policy, then burning the building. He testified that the defendant approached him and offered to lend him money to purchase the property. He testified that he initially thought the property would be a home for his family. The defendant later told him that the property would be burned and he would receive a cut of the insurance proceeds. Gilmore testified that he was involved in the purchase of the property and the insurance, but the money for the purchases came from the defendant. Gilmore also testified that he did not start the fire, although he knew a fire was planned.
*689 Detective Mendoza and Investigator Pfis-ter testified that the defendant admitted starting the fire in an oral statement, but refused to commit the statement to writing.
A former tenant testified that she saw the defendant, known to her as Johnny Evans, with another man around the apartment, carrying rags and wood, a few days before the fire.
ERRORS PATENT REVIEW
A review of the record for errors patent reveals that there were none. ASSIGNMENTS OF ERROR ONE AND TWO
By his first assignment of error the defendant claims that the trial court should have granted the defense motion for mistrial when inadmissible other crimes evidence was elicited from a witness. By his second assignment of error he claims that the trial court should have admonished the jury, as requested by counsel, after that inadmissible and highly prejudicial other crimes evidence was elicited.
C.Cr.P. art. 770, in pertinent part, provides:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
C.Cr.P. art. 771, in pertinent part, provides:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made ' during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
The testimony complained of occurred when defense counsel was questioning Investigator Pfister, as follows:
Q I ask you once again, sir, do you recall that Friday evening when we were here well into the darkness talking about this matter?
A I do recall it, yes, sir.
Q Do you recall telling me at that particular time that my client went on for an extensive period of time about the details of the fire on Conti Street?
A Well, I don’t know if it was just on one fire.
Defense counsel urged a motion for mistrial based on an inadmissible reference to other crimes, which motion was denied. Counsel then moved the court to admonish the jury. The court then noted for the record that an admonishment to the jury to disregard the comment would only add emphasis to the comment. Defense counsel, while not withdrawing his motion for admonishment, admitted that he understood the court’s problem and that he had “no idea how it [the admonishment] could be couched.”
For some time prior to that exchange, defense counsel had questioned the witness about various aspects of his interrogation of the defendant. One of the points counsel apparently tried to make was that the defendant was interrogated for an extensive amount of time, yet the information he *690 gave was limited. The following excerpt is noted:
Q And, that was the extent of the statement that he made to you about the fire on Conti Street?
A He made some other statements about some other things.
Q So, basically, the conversation was: “I started the fire some time in the morning in the front of the building.” That was his whole statement?
A Basically, yes, sir.
Q So, that took what, twelve seconds? A About five minutes, maybe, we talked to him.
Q I don’t understand. For purposes of the fire at 2021 Conti Street, if he told you he started it some time in the morning, in the front, how that takes five minutes. It just took me five seconds.
Appellate counsel argues that Investigator Pfister should be viewed as a court official and that his comment thus required mandatory mistrial. In State v. Schwartz, 354 So.2d 1332 (La.1978), the Louisiana Supreme Court held that certain prior decisions were “unsound insofar as they reflect the notion that police officers should be held to a lesser standard than judges or prosecutors because they are less familiar with rules of evidence.” The court noted that an officer whose testimony gratuitously implicated the defendant in other crimes, had given similar “unresponsive answers” in other cases. The court further noted that the recurrence of such testimony by an experienced and knowledgeable witness establishes too clear a pattern for the court to continue to excuse the highly prejudicial unresponsive remarks as being inadvertent, unplanned or unexpected by prosecuting attorneys.
In State v. Douglas, 389 So.2d 1263 (La.1980), the court held: “An investigation officer is a witness, but is closely related to the district attorney in presentation of the prosecutor’s case.” (Emphasis added.) The court held that a remark by such an officer should be viewed with “considerable concern” and “may require a mistrial.”
The comment by Investigator Pfis-ter was not elicited by the district attorney, but rather by the defense. Taken in the context of the cross-examination, it appears that the officer was, by his answer, attempting to explain the length of the questioning, to avoid any inference from defense counsel’s questions, that the defendant was badgered into making admissions. By his earlier reference to “other things,” it is clear that the witness did not intentionally refer to the other crimes of which the defendant was charged. The comment thus did not require a mandatory mistrial.
As to the content of the reference, the officer’s answer that he did not know if the extensive questioning was “just on one fire” did not specify any other fire or other crime. In addition, the comment was a reasonable response to the questions posed by the defense counsel. Because no specific other crime was referenced, any admonishment would have unnecessarily focused the jury’s attention to the possibility of other fires. Under the circumstances, there was no error in the trial court’s refusal to admonish the jury.
ASSIGNMENT OF ERROR THREE
By his third assignment of error the defendant contends that the trial court erred in compelling the defendant’s former co-defendant, Frank Gilmore, to testify in spite of Gilmore’s attempt to invoke his Fifth Amendment privilege. The defendant cites two federal cases to support the defendant’s standing to invoke the Fifth Amendment privilege of Gilmore.
Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953), concerned the breach of a restrictive covenant in areal estate sale. The action was brought by parties to the covenant who sought damages from a co-covenantor who allegedly conveyed realty without incorporating the restriction in the deed and permitted non-Caucasians to move in and occupy the premises. The Court there held that the co-covenantor against whom damages were sought, because it affected her pecuniary loss, could assert the constitutional equal protection rights of non-Caucasians.
*691 In Ellis v. United States, 416 F.2d 791 (D.C.Cir.1969), the court cites Barrows for its holding that the reasons which underlie the Court’s rule denying standing to raise another’s rights are, under certain circumstances, outweighed by the need to protect the fundamental right which would be denied by permitting the action to be maintained. Ellis dealt with a witness invoking his Fifth Amendment privilege, as in the instant case. The trial court there, as in the instant case, recognized that he had no authority to grant immunity. The trial court there reasoned incorrectly that the witness would be protected by the rule set forth in Murphy v. Waterfront Comm’n, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). That rule protected a witness in state court from the use of compelled testimony or its fruits in federal court. The Ellis court found that, like Barrows, the defendants in the instant case were the only parties who could reasonably have standing to assert the constitutional claim of another. However, the court further held that, because the unindicted witness had already testified before a grand jury, he had waived his Fifth Amendment privilege.
Although Frank Gilmore did not testify before a grand jury, he did voluntarily give a written statement and plead guilty to the charge.[1] By so doing, he waived his Fifth Amendment right to the extent of the information already given. As noted by the state in its brief, Gilmore was not questioned relative to any mailings, which could have lead to incrimination on federal mail fraud charges. Thus, even if this defendant has standing to assert the privilege of the witness, the claim has no merit because the witness waived his privilege relative to the testimony he was compelled to give.
ASSIGNMENT OF ERROR FOUR
By this assignment of error, the defendant claims that the court erred in denying the defendant the opportunity to fully cross-examine the witness Frank Gilmore, thereby violating his right to confront his accusers and cross-examine the witnesses against him. The defendant further avers that Gilmore’s initial refusal to testify is highly suggestive of the lack of reliability of the testimony given. The defendant specifically claims that the court instructed defense counsel not to question Gilmore relative to his testimony having been compelled by the court.
Defense counsel has attached an affidavit to his brief which states that: “following the court’s order that the witness Gilmore testify, counsel for the defendant was instructed that he was not to cross-examine this witness about the fact that the witness had attempted to invoke his Fifth Amendment privilege and had refused to testify; that these instructions by the trial court do not appear in the transcript of these proceedings, but that affiant, trial counsel for the defendant specifically recalls having been instructed by the court in this manner; affiant further recalls voicing his objection to the court’s ruling; and, pursuant to the court’s ruling no questions were asked of the witness Gilmore concerning his initial refusal to testify.”
The alleged instruction of the court and objection by the defense are beyond the record. However, even were this issue properly before the court on appeal, it would have no merit. The court’s ruling that the witness must testify was a legal question. There was nothing in that order suggesting that the witness had to testify falsely to satisfy the state. Likewise, even though the witness claimed he was tricked into making a statement, he acknowledged throughout his testimony that his statement was the truth. The issue of the vol-untariness of Gilmore’s statement was fully developed in cross-examination. The willingness of the witness to testify, however, was not relevant to the facts of the case and was properly excluded.
ASSIGNMENT OF ERROR FIVE
The defendant’s final assignment avers error in the trial court’s denial of the mo *692 tion for new trial. That motion raised two issues: (1) The testimony was fraught with contradiction, and (2) The testimony of witness Frank Gilmore was compelled over Gilmore’s Fifth Amendment privilege. The court’s compulsion of Gilmore’s testimony is addressed in assignment three and is not reconsidered here.
The discrepancies in the testimony was fully explored by the defense and presented to the jury. The only major discrepancy concerned the presence of federal agents at the questioning of the defendant. At the preliminary hearing and trial Detective Mendoza testified that federal agents, George Bradley and Robert Schaal were present, along with NOFD Investigator Pfister, for the questioning and written statement of Frank Gilmore on January 25, 1991; but that only he and Investigator Pfister were present for the subsequent oral statement by the defendant. Agent Schaal corroborated that testimony at trial. However, Investigator Pfister testified at the preliminary hearing that the federal agents were present during the questioning of the defendant. At trial, Investigator Pfister testified that the agents were present during Gilmore’s questioning, not the defendant’s. On cross-examination, Investigator Pfister said that he was wrong at the preliminary hearing, that the federal agents were present for the questioning of Gilmore. The jury found this explanation credible. The trial court agreed. To find otherwise, one would have to presume that both Agent Schaal and Detective Mendoza lied, and to no apparent purpose. Accordingly, the assignment relative to the denial of the motion for new trial based on discrepancies in the testimony is of no merit.
For the foregoing reasons we affirm the conviction and sentence of the defendant.
AFFIRMED.

. Although Gilmore testified that he was "tricked” into giving his statement, by his own testimony and the testimony of the officers who witnessed the statement, Gilmore was advised of his rights and appears to have voluntarily waived them prior to making a written statement. He fails to explain in what manner he was tricked.