647 So.2d 1313 (1994)
STATE of Louisiana
v.
Algie SPEARS.
No. 94-KA-0327.
Court of Appeal of Louisiana, Fourth Circuit.
December 15, 1994.
*1314 Harry F. Connick, Dist. Atty., Mark D. Pethke, Asst. Dist. Atty., New Orleans, for plaintiff-appellee.
Archie B. Creech, New Orleans, for defendant-appellant.
Before SCHOTT, C.J., and KLEES and LANDRIEU, JJ.
SCHOTT, Chief Judge.
Defendant was convicted of armed robbery in violation of R.S. 14:64. On June 8, 1982, he was sentenced to ninety-nine years at hard labor. The Louisiana Supreme Court affirmed the defendant's conviction and sentence in a per curiam opinion. State v. Spears, 430 So.2d 669 (La.1983). In accordance with a federal court order in habeas corpus proceedings, the trial court granted defendant this out of time appeal.
On December 30, 1981, JoAnn Jenkins, the manager of a Tenneco service station in New Orleans, was waiting on some customers when she noticed the defendant walking outside of the store. She knew him by sight because he was the boyfriend of Martha Horton, the daughter of one of the store's employees, Josephine Hampton; but she did not know his name at the time of the incident.
About two minutes after the customers left, defendant entered the service station with the hood of his jacket pulled down around his head, brandished a gun and ordered Jenkins to get on the floor and not to look at him. The defendant then opened the cash register and removed its contents. He did not remove a five dollar bill which, when removed, would trigger a surveillance camera. The defendant then opened the bottom drawer of a nearby filing cabinet and removed a bag of change normally stored there. He did not ask Jenkins beforehand where the change was kept. Jenkins testified that, while she did not see the perpetrator's face, she recognized his voice as that of defendant. Ms. Jenkins also recognized his clothing, since he had passed the store only minutes earlier wearing the same green army jacket, blue jeans and white tennis shoes. After he left, Ms. Jenkins pressed an alarm to notify the police.
New Orleans Police Detective Larry Arthur investigated the armed robbery. On January 28, 1982, he conducted a photographic lineup in which Ms. Jenkins selected the defendant as the perpetrator of the armed robbery.
Stanley Burds, Ms. Jenkins' supervisor, arrived at the service station shortly after the robbery and learned from Jenkins that Martha's boyfriend was the perpetrator. Mr. Burds telephoned Josephine Hampton, Martha's mother, to learn the man's name. Burds later told Ms. Hampton about the armed robbery. Shortly thereafter, Burds received a call from the defendant during which the defendant denied any involvement in the robbery but told Burds that he knew who committed the robbery and could get the stolen articles back. The defendant agreed to meet with Burds at the service station to discuss the matter, but the defendant never appeared. About one hour later, Martha Horton telephoned Burds and told him that *1315 defendant could not have committed the robbery because he dropped her off at work that morning and then watched their little boy.
Martha Horton testified that the defendant did not own a pair of white tennis shoes or a green army jacket. She stated that the defendant dropped her off at work in Kenner, Louisiana that morning and could not have returned to the Tenneco service station on Louisiana Avenue in time for a 10:00 a.m. robbery. However, she also stated that the defendant was at their home at about 10:15 a.m., nine blocks from the Tenneco station, when she called her home that morning. Her sister, corroborated her testimony that the defendant did not own a green army jacket.
A review of the record for errors patent reveals that the trial court imposed an illegally lenient sentence. R.S. 14:64 relative to armed robbery requires that any sentence imposed be served without the benefit of probation, parole, or suspension of sentence. The court's sentence did not include these restrictions. On appeal, this Court will not correct errors favorable to a defendant where the issue is not raised by the State. State v. Fraser, 484 So.2d 122 (La.1986).
In addition, the record reveals one other potential error. The arraignment was set for March 8, 1982. However, neither the docket master entry nor the minute entry of that date indicates that the appellant was formally arraigned or pled not guilty. Defendant did not object to the lack of an arraignment, nor does he allege it as error now. As such, the failure of the record to show if the appellant was arraigned on the charges is harmless error. C.Cr.P. art 555; State v. Bray, 548 So.2d 350 (La.App. 4th Cir.1989). No other errors patent were found.
In his first assignment of error, defendant claims that his trial counsel was ineffective when he elicited from Detective Arthur on cross-examination the reasons for including the defendant's photograph in the photographic lineup shown to Ms. Jenkins. The defendant argues that counsel's examination allowed for the introduction of inadmissible hearsay which resulted in prejudice to him.
During cross-examination of Detective Arthur, defense counsel questioned the officer on how he came up with the defendant's name. Det. Arthur responded that he received an anonymous phone call naming defendant as the perpetrator of the armed robbery.
Q. Did you have access to a written statement?
BY MR. CIACCIO:
Your Honor, I'm going to object. The victim is in court to testify. Counsel is asking him for hearsay.
BY MR. LARRE:
Your Honor, I'm trying to find the basis for the identification per se. In direct examination, this gentleman is saying he showed these particular pictures to this lady to find out a name. I want to find out, I think I'm entitled to find out what led him to the basis of picking this gentleman's picture to put in the group.
BY THE COURT:
All right, Officer, answer the question.
CROSS-EXAMINATION RESUMED:
A. The basis for me picking the picture of the defendant, Algie Spears, I received an anonymous phone call from the crime stoppers saying they personally knew Algie Spears was the perpetrator of an armed robbery at the Tenneco station which occurred on December 30th, that's why your client's picture was in the photo lineup.
Q. An anonymous phone call?
A. Yes, sir, that's correct.
Q. Now, you say that you were trying to find a name of this person you already knew the name of a person who was alleged to be the perpetrator of the crime?
A. No, sir, I did not.
Q. Well, how did the crime stoppers identify this gentleman as the person who committed the crime?

*1316 A. You'd have to ask the person that called that in, I don't know.
Q. Well, I'm confused. You're saying as a result of an anonymous phone call from the crime stoppers, you felt like that Algie Spears was the person that committed a robbery?
A. I felt like there was a possibility that Algie Spears was the person that committed the robbery so I put him in the photo line-up.
Q. But whoever called on the phone, how did they identify him as the possible person, did they say Algie Spears?
A. Yes, sir, they did. They stated that Algie Spears was the perpetrator and was currently locked down in Parish Prison.
Q. To the best of your knowledge did the victim of this crime get a look at the face of the person while he was holding the gun on her?
A. To the best of my knowledge did the victim get a look at the face of the person while he was holding the gun on her?
Q. While the actual robbery was taking place.
A. No, sir.
In State v. Francosi, 511 So.2d 1181, 1182 (La.App. 4th Cir.1987), this court defined hearsay as "testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of the matter asserted therein, and thus, resting for its value upon the credibility of the out of court asserter." As per R.S. 15:434, as it existed at the time of trial, hearsay evidence was generally inadmissible at trial. In the instant case, the officer's account of the crimestoppers' telephone conversation was not admitted to prove that the defendant was the perpetrator. The content of the conversation was introduced to simply show why the police officer placed the defendant's photograph in the photographic lineup. As such, the testimony does not constitute hearsay.
In any event, this evidence was not prejudicial. A review of the entire trial transcript reveals that this cross-examination of Detective Arthur was part the defense counsel's strategy to emphasize that there was no eyewitness to the armed robbery who gave the officer a physical description of the perpetrator. In his opening statement, defense counsel noted that the victim would testify that she did not see the perpetrator's face. The victim would only be able to say that someone in a green-hooded jacket robbed her. On cross-examination of the victim, defense counsel questioned the victim's identification of the defendant as the perpetrator. The victim acknowledged that she could not see the perpetrator's face. The hood was pulled down over his face. Further, the victim stated that she could not get a look at the perpetrator's face as she was lying on her stomach on the floor during the robbery. The victim only saw the perpetrator's clothes.
This court has recognized that if an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel." State v. Bienemy, 483 So.2d 1105 (La.App. 4th Cir.1986). Moreover, as "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." State v. Brooks, 505 So.2d 714, 724 (La.), cert. denied, Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987). Defense counsel's production of this evidence clearly fell within the ambit of trial strategy. Accordingly, this assignment of error is without merit.
Furthermore, we note, without intending any criticism of trial counsel's strategy, that identification of the defendant was not really a serious issue in their case. Jenkins knew the defendant by sight. She saw him in plain view, undisguised, in front of the store just before he came in with his clumsy disguise. She knew this was the same person from the clothing he was wearing and she recognized *1317 his voice. Regardless of how his photograph got into the lineup she was going to pick him out.
The defendant also argues that his trial counsel was ineffective when he failed to move for a mistrial or request an admonition under Art. 770 or 771 when Detective Arthur referred to another crime allegedly committed by the defendant. The "other crimes" evidence to which the defendant refers is Detective Arthur's statement during cross-examination that the defendant was "currently locked down in Parish Prison."
In State v. Lopinto, 619 So.2d 686 (La.App. 4th Cir.1993), this Court concluded that an officer's remark that he didn't "know if [it defendant's statement] was just on one fire...." was not a specific reference to another crime committed by the defendant. The First Circuit held in State v. Nevers, 621 So.2d 1108 (La.App. 1st Cir.), writ denied, 617 So.2d 906 (La.1993), that an officer's comment that the defendant had "just gotten out of the `pen' a couple of weeks prior" was not an unambiguous reference to a particular crime committed or alleged to have been committed by the defendant. A police officer's statement that he ran the defendant's name through the "NCIC and learned that he [the defendant] had an outstanding attachment for his arrest" was determined to be "at best, an indirect reference to another crime and ... subject to various interpretations..." State v. Overton, 618 So.2d 439, 441 (La.App. 5th Cir.1993). Similarly, in State v. Dabney, 553 So.2d 1052, 1054 (La. App. 4th Cir.1989), writ denied, 558 So.2d 582 (La.1990), an officer's comment that he put the defendant's name into the computer and "the computer came back with the arrest information" was held to be "an indirect, unexplained reference to information which the average juror may not have realized pertained to another crime."
As in the cases cited above, Detective Arthur's statement that the defendant was "currently locked down in Parish Prison" was not an unambiguous reference to another crime committed or alleged to have been committed by the defendant. Thus, it would have been entirely within the discretion of the trial court to grant an admonition. The officer's remarks would not have entitled the defendant to a mistrial. Just as the decision to request an admonition rather than to move for a mistrial was held to be a legitimate exercise of trial strategy in State v. Grant, 614 So.2d 344, 346 (La.App. 4th Cir 1993), the decision not to seek either an admonition or mistrial likewise involved counsel's trial strategy. Seeking an admonition would only have drawn further attention to the fact that the defendant was incarcerated at the time of his arrest for the armed robbery. Since counsel's failure to seek a mistrial or an admonition was not deficient, this assignment of error is without merit.
Accordingly, the conviction and sentence are affirmed.
AFFIRMED.