563 So.2d 291 (1990)
STATE of Louisiana
v.
Erin HUNTER.
No. 88-KA-2061.
Court of Appeal of Louisiana, Fourth Circuit.
April 12, 1990.
*292 Harry F. Connick, Dist. Atty., Jack Peebles, Asst. Dist. Atty., New Orleans, for plaintiff.
Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for defendant.
Before SCHOTT, C.J., and CIACCIO and PLOTKIN, JJ.
PLOTKIN, Judge.
Erin Hunter was arrested and incarcerated on July 17, 1987. He was indicted by a grand jury on September 16, 1987, for second degree murder, a violation of La.R.S. 14:30.1. Trial was held on July 27, 1988. Hunter was found guilty as charged by the jury. He was sentenced on September 15, 1988, to life imprisonment, without benefit of probation, parole, or suspension of sentence.
On April 28, 1987, at about 9:15 p.m., Vanessa Causey, the girlfriend of the victim, Gregory Jones, went to a lounge on Chef Highway to look for Jones. When she did not find him there, she walked back toward the house where they lived together. When she was about a half block away from the house, she heard three gunshots and saw a black male leave the front yard of the house, get into a car, and drive past her. When she entered the yard, she found Jones lying in the driveway. He had been shot twice, in the chest and wrist, and died as he was taken to the hospital. When the police arrived, Ms. Causey reported that the man she had seen leave the scene was a dark-skinned black male, weighing about 185 pounds, wearing a beige cap, who was named "Willie."
The original police investigator retired and the case was reassigned to Officer Jacklean Davis in July 1987. She telephoned Ms. Causey who then identified the murderer as Erin Hunter. On July 9, 1987, Officer Gaudet executed a search warrant of Hunter's residence after receiving information from Stewart Mitchell that Hunter was in possession of stolen goods. During the search, Officer Gaudet found three guns, one of which was later proven by ballistics tests to be the weapon that killed Gregory Jones. At about the same time, Officer Davis presented a photographic lineup to Ms. Causey who identified Erin Hunter as the person she had seen the night of Jones' murder. Hunter stated that he was watching a band rehearsal at Earl Phillips' home the night of the murder. This was confirmed by the testimony of Phillips.
On appeal, Hunter contends pro se that the trial court erroneously admitted the gun as evidence since it had been illegally seized, that his right to a speedy trial had *293 been violated, that he was denied his right to defend himself when the trial judge would not let him tell his story, that the state knowingly used perjured testimony, and that he was denied effective assistance of counsel.
Appellant Hunter's first issue on appeal is the admissibility of the gun into evidence. He does not contend that the search warrant was invalid, but that it specified certain items for which it authorized a search and seizure: a stolen television set and narcotics. Under La.C.Cr.P. art. 162, a judge may issue a search warrant upon probable cause and the warrant shall particularly describe the things to be seized. However, La.C.Cr.P. art. 165 provides that during the course of execution of a search warrant, a police officer may seize other things not described in the warrant which may constitute evidence proving the commission of any offense. The standard is whether the items tend to prove the commission of any offense. State v. Feeback, 414 So.2d 1229 (La.1982); State v. Brouillette, 465 So.2d 124 (La.App. 4 Cir. 1985). Thus the admission of the gun into evidence was not error.
The second issue on appeal is the denial of Hunter's right to a speedy trial. Hunter was arrested and incarcerated on July 16, 1987. He filed a motion for a speedy trial on January 8, 1988. The Louisiana Supreme Court ordered the trial court to hold a hearing on the issue on April 7, 1988. The hearing seems to have been held on April 21, 1988. Trial was held on July 27, 1988.
La.C.Cr.P. art. 701 states the right of a defendant to a speedy trial. However, the remedy provided by this article is pre-trial release. Thus Hunter's claim under this article is moot. The Sixth Amendment of the U.S. Constitution also provides a right to a speedy trial. This is a fundamental right which has been imposed on the states by the due process clause of the Fourteenth Amendment. Barker v. Wingo, 407 U.S. 514, 515, 92 S.Ct. 2182, 2184, 33 L.Ed.2d 101 (1972). Whether this right has been violated is determined by a four-part test: the length of the delay, the reason for the delay, the defendant's assertion of his or her right, and prejudice to the defendant. Id., 407 U.S. at 530, 92 S.Ct. at 2192; State v. James, 394 So.2d 1197, 1200 (La. 1981).
In the instant case, the delay was approximately one year from the defendant's arrest. The alleged reason for the delay was the state's inability to find Vanessa Causey, the key witness for the prosecution. The defendant did file a writ application asserting his right. The only prejudice Hunter alleges is that he was unable to procure two additional alibi witnesses, former members of the band. He does not indicate how the delay of trial contributed to his inability to secure their testimony. Thus he has not shown sufficient prejudice to find a constitutional violation of his right to a speedy trial.
The third issue is whether the trial judge erred in cutting off Hunter's attempt to tell his story at the end of the state's cross examination. The judge's action was proper under La.C.Cr.P. art. 17: a court has the duty to require that proceedings be conducted in an orderly manner.
The fourth issue on appeal is whether the state knowingly introduced the perjured testimony of Ms. Causey. Appellant has not shown that the state had any knowledge that her testimony was perjured. He also has not definitely proved that her testimony was perjured, only that it conflicted with her earlier statements. This issue is without merit.
The fifth issue on appeal is whether Hunter received effective assistance of counsel at trial. This issue is most properly raised after appeal in an application for post-conviction relief. La.C.Cr.P. art. 924. State v. Prudholm, 446 So.2d 729, 737 (La.1984); State v. Reed, 483 So.2d 1278 (La.App. 4 Cir.1986). However, if the record discloses sufficient evidence to rule on the merits of this claim, then the interests of judicial economy justify consideration of the matter on appeal. State v. Seiss, 428 So.2d 444, 449 (La.1983); State v. Garland, 482 So.2d 133, 134 (La.App. 4 Cir.1986).
*294 The U.S. Supreme Court has defined a two-pronged test for determining whether counsel has been effective: the defendant must show that counsel's performance was deficient, and that this deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). "The defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." State v. Bienemy, 483 So.2d 1105, 1107 (La.App. 4 Cir.1986).
The first prong of the Strickland test is deficient performance by counsel. In the instant case, defense counsel failed to produce the police report at trial or to use it to impeach the testimony of Vanessa Causey. According to Ms. Causey's statement in the police report, given the night of the murder, the man she saw leaving the yard was dark-skinned, weighed 185 pounds, wore a beige "Dobbs" cap, and was named "Willie." At trial Ms. Causey testified that the man was Erin Hunter, who is light-skinned, weighs 145 pounds, and that he wore a white baseball cap. She testified that some people called Erin Hunter "Willie." On cross examination, Ms. Causey denied having given a description of the assailant to the police investigator. Furthermore the police report states that Ms. Causey and the victim's brother saw a black male walking away from the scene, whereas Leslie Hill, another witness, had reported a man driving away. At the trial, Ms. Causey testified that she had seen the assailant get into a car which drove toward her and passed her in close proximity. These alleged discrepancies were never brought up during the trial. Furthermore, defense counsel did not introduce evidence of Ms. Causey's alleged drug habits or of her alleged previous work as an informant for Officer Davis on other cases. Such information could also have served to impeach the credibility of Ms. Causey. Defense counsel did not subpoena to testify Leslie Hill, who had told the police investigator that he had seen the assailant, and whose name and address were listed in the police report. Defense counsel also did not investigate or discuss with the defendant which of the three guns seized was the murder weapon. Hunter testified that he found this out for the first time at trial. He further testified that he had bought the gun in question from a man named Willie Harris. Since he had no prior knowledge of which gun was the murder weapon he was unable to procure Harris as a witness. No effort was apparently made to introduce the report of the residence burglary wherein the subject revolver was stolen on April 28, 1987, at 4 a.m., approximately seventeen hours before the victim was shot. The defendant had no record of being a burglar. The close proximity in time between this burglary and the shooting of the victim could lead to an inference that the same person committed both crimes. Finally, defense counsel allegedly did not provide Hunter with an opportunity to tell his story during trial. The right to make one's defense personally is implied by the Sixth Amendment to the U.S. Constitution. Faretta v. California, 422 U.S. 806, 819, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975).
The second prong of the Strickland test is prejudice. The state's case rested upon two factors: the identification of Hunter by Ms. Causey, placing Hunter at the scene of the murder, and the discovery of the murder weapon in Hunter's apartment. If counsel had effectively impeached the testimony of Ms. Causey with the police report and alleged evidence of her background as an informant and involvement with drugs, this would have eliminated the existence of any evidence connecting Hunter with the locale of the crime on the night it occurred. Secondly, if counsel had effectively investigated and informed Hunter which gun was the murder weapon, Hunter might have procured the testimony of Willie Harris, which might have shown when and how the gun came into Hunter's possession. If either of the above elements of the state's case against Hunter were eliminated, there is a high probability that the outcome of the trial would have been different and that a reasonable jury could not have found Hunter guilty beyond a reasonable doubt.
For the above reasons, this Court finds that Erin Hunter did not receive effective *295 assistance of counsel at trial. The lack of effective assistance of counsel at trial is reversible error.
On review of the record, this Court makes the following additional observation. The defendant, pro se, filed a motion for discovery on October 2, 1987. The twelfth interrogatory asked:
12. Is the State in possession, control or custody of any books, papers, documents, photographs, tangible objects, buildings, places, copies or portions thereof which are favorable to the defendant and which are material and relevant to the issue of guilt or innocence? C.Cr.P. art. 712(2).
In response to this interrogatory, which sought exculpatory evidence under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the State responded, "No." This answer was erroneous and misleading because the State had in its possession the police investigative report wherein someone, whose name and physical characteristics did not match those of the defendant, was accused of the crime by the witness, Ms. Causey.
Since the defendant, Erin Hunter, did not receive effective assistance of counsel at trial, we reverse his conviction and remand for a new trial.
REVERSED AND REMANDED.