614 So.2d 332 (1993)
STATE of Louisiana
v.
Erin HUNTER.
No. 92-KA-1155.
Court of Appeal of Louisiana, Fourth Circuit.
February 11, 1993.
*333 Harry F. Connick, Dist. Atty., Jack Peebles, Asst. Dist. Atty., New Orleans, for plaintiff/appellee.
G. Frederick Kelly, III, Kelly and Davenport, New Orleans, for defendant/appellant.
Before CIACCIO, ARMSTRONG and WALTZER, JJ.
ARMSTRONG, Judge.
Defendant, Erin Hunter, was indicted by a grand jury for second degree murder, a violation of La. R.S. 14:30.1. Following trial by jury, defendant was found guilty as charged and sentenced to life imprisonment without benefit of parole, probation or suspension of sentence.
Defendant appealed and a panel of this court reversed his conviction on the ground of ineffective assistance of counsel and remanded the case for a new trial. State v. Hunter, 563 So.2d 291 (La.App. 4th Cir. 1990). After granting the State's application for rehearing, the same panel of this court again reversed and remanded the case for a new trial. State v. Hunter, 563 So.2d 295 (La.App. 4th Cir.1990). The State applied for writs and the Louisiana Supreme Court reversed the decision of this court, and remanded the case to the trial court for an evidentiary hearing on the ineffective assistance of counsel claim. State v. Hunter, 567 So.2d 1112 (La.1990).
Following an evidentiary hearing, the trial court found that defendant had not been denied effective assistance of counsel. Defendant now appeals, reiterating, among other assignments of error, his claim of ineffective assistance of counsel.

FACTS
On April 28, 1987 at about 9:30 p.m., Vanessa Causey, the girlfriend of the victim, Gregory Jones, was walking to her home located at 433 Wilson Street, where she lived with Jones. When she was about one-half block from the residence, she heard three gunshots. At defendant's trial Causey testified that she then saw a black male wearing a white cap walk from the front yard of her house and get into an automobile on the passenger side. The vehicle then began to drive away from the residence, toward her. As the vehicle passed her she looked at the black male in the passenger seat and allegedly recognized him as defendant, Erin Hunter. She said she knew him because he had previously dated her sister.
As Causey reached her house, she saw the victim lying in the front yard. He had been shot twice, once in the chest and once in the wrist. He died shortly thereafter. When the police arrived to investigate, Causey told New Orleans Police Detective Donald Hoyt, the officer in charge of the investigation, that the man she saw leaving the scene was someone named "Willie." She later explained that "Willie" was defendant's nickname.
Det. Hoyt retired from the police force shortly thereafter, and Det. Jacklean Davis took over the investigation in July 1987. She obtained Causey's name from Hoyt's follow-up report and called her. Causey told her that the name of the murderer was Erin Hunter. This was the first time Causey had told police defendant's name, although she testified at trial that she knew his name at the time of the murder.
After learning the name of the alleged murderer, Det. Davis discovered that a gun the same caliber as the murder weapon had *334 recently been seized by police from defendant's residence in connection with an unrelated criminal investigation. On July 9, 1987, Det. Steven Gaudet had received information from a Stewart Mitchell that led him to suspect that a stolen television and drugs were in defendant's residence at 3030 Cleveland Street. He secured a search warrant that same day for these items at 3030 Cleveland Street. When the warrant was executed on that date, Det. Gaudet recovered a .38 caliber blue steel revolver, in addition to three other handguns.
Det. Davis requested that Gaudet submit the gun for a ballistics test to determine if the bullet recovered from Gregory Jones' body had been fired from the .38 caliber revolver. The ballistics test revealed that the bullet which had killed Gregory Jones had been fired from the .38 caliber revolver recovered from defendant's house. Meanwhile, on July 16, 1987, Det. Davis showed Causey a photographic line-up containing defendant's photograph and those of five other black males. Causey identified defendant from the line-up as the murderer.
At trial, the State presented as witnesses a pathologist from the Orleans Parish Coroner's Office, Causey, a police officer who had been present at the scene of the murder, Det. Davis, Det. Gaudet, and the crime lab technician who conducted the ballistics test. The defense presented defendant and Earl Phillips, who both claimed that on the night of the crime, defendant was at Phillips' house watching Phillips' band rehearse. The defense also presented Stewart Mitchell, who vaguely testified that he was approached about testifying for the State in this case, although he did not know the victim or Causey, or know who murdered the victim.

INEFFECTIVE ASSISTANCE OF COUNSEL
As stated in our earlier opinions, a claim of ineffective assistance of counsel is most properly raised after appeal in an application for post-conviction relief. La. C.Cr.P. art. 924; State v. Prudholm, 446 So.2d 729 (La.1984); State v. Reed, 483 So.2d 1278 (La.App. 4th Cir.1986). However, if the record discloses sufficient evidence to rule on the merits of this claim, then the interests of judicial economy justify consideration of the matter on appeal. State v. Seiss, 428 So.2d 444 (La.1983); State v. Garland, 482 So.2d 133 (La.App. 4th Cir.1986).
The U.S. Supreme Court has set forth a two-prong test for determining whether counsel has been effective. The defendant must show (1) that counsel's performance was deficient, and (2) that this deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "The defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." State v. Bienemy, 483 So.2d 1105, 1107 (La.App. 4 Cir.1986).
In the instant case, defendant maintains that his conviction rests on (1) the testimony of Causey, who identified him as the person she saw fleeing the scene of the murder moments after hearing gunshots, and (2) the recovery of the murder weapon in defendant's residence. Defendant claims his defense counsel failed to properly cross-examine Causey on discrepancies in her initial description of the person she saw leaving the scene of the crime, and the description she gave when she testified at trial. Defendant also claims defense counsel failed to bring out before the jury the difference between Causey's initial description and his appearance.
Defendant also makes a more disturbing claim that important evidence in the police report was not brought to the attention of the jury. He points to the police report available to his defense counsel which showed that the murder weapon had been stolen in a residence burglary between seven and twenty-seven hours before the murder and that neighbors reported two unknown black males near the burglarized residence approximately ten hours before the murder. Defendant claims none of this information was brought to the attention of the jury.
*335 Defendant maintains this was important, especially in light of his testimony before the jury that he bought the murder weapon from a person named Willie Harris sometime in June, 1987, which would have been two months after the murder. Defendant notes that Causey initially named the person she saw running from the scene as someone she knew as Willie. Also, defendant maintains that he did not know until the day of trial which of the handguns seized from his residence was the murder weapon, despite written letters to his attorney requesting this information.
During pretrial proceedings defense counsel filed a Motion to Suppress the Identification. Defendant claims that on the day of the motion hearings Causey did not show up and the trial court specifically stated that it would complete the hearing on that motion by hearing Causey's testimony before the start of trial. Defendant claims that the Motion to Suppress the Identification hearing was never completed before the start of trial.
At the evidentiary hearing the trial court refused to allow defense counsel to introduce in evidence, or to proffer, the file of his former defense counsel. Because we find the claims of defendant raise serious questions about the effectiveness of his counsel and the possibility of prejudice to the defendant, we believe the trial court should have, at the very least, conducted an in camera inspection of defense counsel's file to determine whether there was anything pertinent to the claim of ineffective assistance of counsel. For that reason, we reverse the judgment of the trial court on the claim of ineffective assistance of counsel and remand this case to the trial court for reconsideration after examination of the file of Jack Dolan, defendant's former counsel. That file or copies of it shall be sealed and made a part of the record of this case for appeal purposes.
We pretermit discussion of defendant's other assignments of error, reserving to defendant all rights to appeal and raise them again.
For the foregoing reasons, we reverse the judgment of the trial court on defendant's claim of ineffective assistance of counsel and remand this case for reconsideration in accordance with the views expressed herein.
REVERSED AND REMANDED.