liPER CURIAM.
Defendant Erin Hunter was charged by bill of indictment on September 16, 1987, with the second degree murder of Gregory Jones, a violation of La. 14:30.1. On July 27, 1988, a twelve-member jury found defendant guilty as charged. Defendant was subsequently sentenced to the mandatory term of life imprisonment at hard labor without benefit of probation, parole or suspension of sentence.
Defendant appealed his conviction and sentence. In Dec. 15, 1994., this court reversed defendant’s conviction, finding that he did not receive the effective assistance of counsel guaranteed by the Louisiana and United States constitutions. The Louisiana Supreme Court granted the state’s writ application and reversed this court’s judgment. State v. Hunter, 567 So.2d 1112 (La.1990). The Supreme RC ourt remanded the case to the trial court for an evidentiary hearing on the claim of ineffective assistance of counsel.
Evidentiary hearings on the issue of the effectiveness of trial counsel were held on September 7, 1991, and November 19, 1991, after which the trial court found defendant had not been denied the effective assistance of counsel at trial. Defendant appealed from this ruling and this court, in State v. Hunter, 614 So.2d 332 (La.App. 4th Cir.1993), reversed the trial court’s ruling and remanded the case, finding that the trial court should have conducted an in-eamera inspection of trial counsel’s file to determine whether there was anything pertinent to the claim of ineffective assistance of counsel. This court specifically reserved to the appellant the right to raise all issues on appeal to this court.
On March 9, 1993, the trial court filed a judgment stating:
“After examining the file of Mr. John Do-lan, Orleans Indigent Defender, the court finds that Mr. Dolan competently represented the defendant, Erin Hunter, at trial. There is nothing in the file of exculpatory nature which Mr. Dolan did not produce. Further, the record of the victim is irrelevant since the defense in not self-defense. In considering the past record of the witness, Vanessa Causey, the court finds no reason to order that produced.... [Tjherefore, the defendant was given a fair trial by his attorney of thirty-three (33) years, in which he has been a legal aid lawyer, prosecutor, and an Orleans Indigent Defender attorney. There is nothing in this record to indicate the defendant, Erin Hunter, did not get a fair trial or was not competently represented.”
This instant appeal is from the trial court’s March 9th judgment.

FACTS:

On April 28, 1987, at approximately 9:30 p.m., Vanessa Causey, the girlfriend of the murder victim, Gregory Jones, went to Sylvia’s Lounge on Chef Menteur Highway with a younger brother to look for Jones. Not finding him there, she began to walk to her home at 4639 Wilson Street, where she lived with Jones. When she was about one-half block from the residence, she heard three gun shots. According to the police report, she told Officer Debra Christiansen that she saw a black male named ‘Willie” walking away from the direction of 4639 Wilson Street. She described him as being “dark skinned,” wearing a beige]£‘Dobbs cap” and a dark shirt, weighing approximately 185 lbs, and standing 5'6" tall. Mrs. Causey told the investigating officer that ‘Willie” had an argument with Gregory Jones earlier that day. She testified that she saw ‘Willie”, who she later identified to the investigating officers as defendant Erin Hunter, holding a gun in his hand. Causey testified that she saw defendant enter an automobile, and as the automobile began to drive away from the residence *1029 toward her, she looked into the passenger side window and recognized defendant, who had previously dated her sister. It was not until the car drove past her that she realized that the man in the beige “Dobbs” cap, holding the gun, was the person she knew as “Willie”. As Ms. Causey reached her house, she saw Gregory Jones lying in the front yard. He had been shot twice, once in the chest and once in the wrist, and died shortly thereafter.
Detective Donald Hoyt was originally assigned to investigate this murder. Detective Jacklean Davis took over the investigation in July 1987 after Hoyt retired. Det. Davis testified that she contacted Vanessa Causey through a telephone number supplied by Ms. Causey’s relatives. According to Det. Davis, Vanessa Causey informed her on July 9,1987 that the man she saw with the gun on April 28, 1987 outside of her residence was defendant Erin Hunter. Ms. Causey testified at trial that she supplied police with the name of ‘Willie” at the time of the murder but was scared and did not reveal ‘Willie’s” real name until this conversation with Det. Davis.
After learning the name of the alleged murderer on July 9, Detective Davis discovered that defendant had been arrested that same day on unrelated charges and that a .38 caliber revolver, the same caliber as the murder weapon used to kill Gregory Jones, had been recovered by police from defendant’s residence in connection with this unrelated case. On July 13, 1987 Det. Davis learned that a ballistics test performed on this .38 caliber blue steel revolver established that the bullet which killed Gregory Jones had been fired by this gun.
Thereafter, on July 16, 1987, Detective Davis conducted a photographic lineup which included a photograph of defendant. Ms. Causey positively identified defendant as the Uperson she saw outside of her residence with a gun in his hand, immediately after hearing the three gun shots.
Defendant testified that he knew nothing of Gregory Jones’ murder until he was arrested and did not see Vanessa Causey on the night of April 27, 1987. Defendant testified that he had obtained the murder weapon from a man named Willie Harris sometime in June 1987. Defendant and Earl Phillips testified at trial that they were at Earl Phillips’ house watching Phillips’ band rehearse during the time this crime occurred.

ERRORS PATENT

A review of the record for errors patent reveals none.

ASSIGNMENT OF ERROR NO. 1:

By this assignment of error defendant contends that the trial court erred in finding that he had received effective assistance of counsel at trial.
In order to establish a claim of ineffective assistance of counsel a defendant must show that counsel’s performance was deficient and that this deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See also State v. Bell, 543 So.2d 965 (La.App. 4th Cir.1989). “Such performance is ineffective when it can be shown that counsel made errors so serious that he was not functioning as the ‘counsel’ guaranteed by the Sixth Amendment.” Bell, at 969. Counsel’s deficient performance will have prejudiced the defendant if it can be shown that counsel’s errors were so serious as to deprive the defendant of a fair trial, one whose result is reliable. Strickland; Bell; State v. Crowley, 475 So.2d 783 (La.App. 4th Cir.1985). The defendant has the burden of showing “that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.
After the case was remanded by the Louisiana Supreme Court an evidentiary hearing was held. At that hearing defendant presented no proof to support many of the allegations praised in his original appeal and relied on by this court in originally finding that he had not received effective assistance of counsel. For example, defendant alleged that he is “light skinned” (which conflicts with the alleged description of a dark-skinned black male related by Ms. Causey to police the night of the murder) but did not *1030 present any proof to corroborate this assertion. Defendant did not produce “Willie Harris” from whom he allegedly bought the murder weapon. Also, defendant did not produce any witnesses who testified that he was not known as Willie.” Thus, despite being given the opportunity to establish that certain evidence did exist and was available to defendant’s original counsel, defendant failed to do so.
Defendant also points to defense counsel’s failure to discuss with defendant which of the three guns seized from his residence was the murder weapon. Defendant testified that he found this out for the first time at trial and therefore was not able to inform his attorney that he purchased the weapon from Willie Harris. Thus, defendant argues, counsel was ineffective for not telling him which gun was involved in the crime and in failing to try to secure Willie Harris as a witness who could corroborate that defendant did not possess the gun until two months after the murder. Original defense counsel John Dolan testified that defendant knew that the murder weapon was a .38 caliber handgun. Although there were two other .38 caliber handguns recovered from defendant’s residence along with the murder weapon, it seems logical that defendant would tell his counsel how, when, and where he received all of the weapons, if there was a chance that the murder weapon was not purchased by him until after the murder occurred. Also, there is no indication in the record that defendant assisted his counsel in attempting to locate Willie Harris so he could be called as a witness at trial. Moreover, at the post-conviction hearing on the issue of ineffective assistance of counsel defendant’s mother testified that she had been informed (from unnamed sources) that this Willie Harris “was killed a couple of weeks after Erin was arrested.” So, on the one hand defendant argues that counsel’s performance was deficient because he did not attempt to locate Willie Harris so that he could testify at trial, and on the other hand defendant’s mother testifies that Willie Harris had been lolled long before trial and before defense counsel even took over as defendant’s attorney.
| (¡Defendant also points to trial counsel’s failure to subpoena Mr. Leslie Hill as a witness at trial. Leslie Hill is named in the police report as a person who saw the perpetrator leaving the scene carrying a weapon. It is also reflected in the report that Hill also saw the perpetrator get into a grey automobile driven by another man and leave the scene. John Dolan’s work file contains a note he wrote asking an investigator for the Orleans Indigent Defender Program to contact Leslie Hill. This note is stapled to a letter addressed to Hill, at the address listed in the police report, requesting that Hill contact him. Attached to these items is a notation by the investigator that on March 3, 1988 he spoke with a female who answered the telephone when he called Hill’s telephone number listed in the police report. This female informed the investigator that Hill had been away from the New Orleans area for almost a year and that when she last heard from him he was in an Atlanta, Georgia mental institution. Det. Jaeklean Davis testified at the hearing that she and another police detective had attempted to locate Hill but were unable to find him. Moreover, if Hill had appeared and testified that he had seen a black male enter a grey automobile and leave the scene with another man driving his testimony would have supported the trial testimony of Ms. Causey.
Although most of defendant’s allegations are uncorroborated, trial counsel’s cross-examination of Vanessa Causey, the state’s main witness in this case, was clearly deficient.- Trial counsel possessed the police report prior to trial. Vanessa Causey’s testimony at trial differs from the narrative in the police report. She identified the person walking away from the crime scene as Willie,” yet subsequently gave defendant’s name to Det. Davis, identified his photograph in a photographic lineup and identified defendant at trial. She testified at trial that she did not provide a description of this person yet the police report indicates that she described this person as a dark-skinned male, approximately 5'6" tall, weighing 185 lbs., and wearing a beige “Dobbs” cap. At trial Ms. Causey testified that the perpetrator was wearing a white baseball cap. Defendant’s arrest record indicates that he weighed 150 lbs. Al *1031 though the supplemental arrest report has a check list to indicate the arrestee’s complexion, including “LT SKIN,” “BROWN” and “DARK,” that check list is blank. There is nothing in the record evidence concerning defendant’s complexion.
| 7Also, the police report indicates Ms. Cau-sey saw “Willie” walking toward her direction, “after that unknown.” At trial, Ms. Causey testified that she saw a man enter a grey car which then drove past her. She testified that she did not identify the person until after the car passed her and she looked into the passenger’s side of the window and recognized defendant. However, as previously mentioned, although Leslie Hill never testified, he allegedly told officers at the time of the murder that he had seen a black male walk and get into a grey car and leave the scene.[1]
The only inconsistency brought out by defense counsel at trial was Ms. Causey’s naming of the person she saw as ‘Willie.” She explained that defendant was called Willie” in addition to his given name. She also testified that she was afraid, she did not want to believe that defendant had committed the murder, and that she stayed in Mississippi for some time after the murder. None of the other contradictions between the police report and Ms. Causey’s trial testimony, as to the description of the murderer, was explored by trial counsel. Ms. Causey was the state’s only witness to these events, although she did not witness the actual shooting, and her credibility was obviously a significant factor in the state’s case.
During his testimony defendant stated that he had purchased (or taken as “collateral”) the .38 caliber revolver used in the murder from someone named Willie Harris. Defendant testified that he bought and sold stolen property. A police report available to defense counsel showed that the murder weapon was stolen from its lawful owner within seven to twenty-seven hours before the murder. Defense counsel did not bring out this evidence before the jury as to the time frame within which the murder weapon had been stolen.
In this court’s earlier decision we found that defendant had not received the effective assistance of counsel guaranteed by the Sixth Amendment. The subsequent hearing held on the issue of ineffective assistance of counsel, together with the inspection of John Do-lan’s file on defendant’s case, have cleared up several matters. The previous panel mentioned as a factor, defense counsel’s failure to introduce evidence of Ms. Causey’s alleged drug habits |8or of previous work as an informant for Det. Davis. However, Det. Davis testified at the hearing that although she had previously investigated a rape in which Ms. Causey had been the complainant, she had no other dealings with Ms. Causey other than in connection with this homicide investigation. While defendant’s mother testified at the hearing on remand that she had informed John Dolan that Ms. Causey was “a known drug addict, and that she had been in and out of jail,” there is nothing to corroborate these assertions.
Considering the evidence as a whole we find that defense counsel’s representation was deficient in that he failed to fully question Ms. Causey as to the discrepancies between her trial testimony and the information allegedly given by her to police on the night of the murder. We also find that counsel’s performance was deficient in that he failed to bring out that the murder weapon had been stolen from its lawful owner only seven to twenty-seven hours before the murder.
The second prong of the Strickland test is whether defense counsel’s deficient performance prejudiced defendant. The State’s case rested on two factors: Ms. Causey’s placement of defendant at the scene of the crime, and defendant’s possession of the murder weapon. Defendant submits that had his original counsel cross-examined Ms. Causey as to the inconsistencies between her trial testimony and the information she gave police on the night of the murder the jury *1032 may well have had a reasonable doubt as to the veracity of her identification of defendant as the person she saw leaving the scene of the murder and that had counsel fully explored defendant’s involvement with stolen property, and brought out that the murder weapon had been stolen the day before the murder, perhaps the jury would have believed defendant’s testimony that he had purchased the stolen murder weapon from a third party after the murder.
However, the jury knew from testimony the following sequence of events: (1) the murder occurs, (2) Det. Davis contacts Ms. Causey two-and-one-half months after the murder and Ms. Causey names defendant as the person she saw leaving the scene of the murder, (3) Det. Davis learns that defendant was arrested for possession of stolen property and discovers that a stolen firearm seized from his residence is the murder weapon. There is no question but that Ms. Causey knew defendant, he had dated her sister. There is no |9question but that defendant possessed the murder weapon. There is no indication whatsoever that Ms. Causey knew that defendant had possession of the murder weapon prior to the time she identified him by name or identified him in the photographic lineup. Considering the facts and circumstances of this case, the probability that Ms. Causey misidentified defendant, whether intentionally or unintentionally, and that this misidentified defendant also had possession of the murder weapon, regardless of how he came into possession of it, appears to be extremely remote. It does not appear that it would have been reasonable for the, jury to have found both that Ms. Causey misidentified defendant and that, coincidentally, defendant just happened to have purchased the murder weapon from someone after the murder occurred. We are unable to say that the result of the trial is unreliable and, thus, we cannot say that defendant was prejudiced by counsel’s lapses.
Therefore, we are unable to say that defendant has demonstrated “that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Accordingly, we are unable to conclude that defendant was denied effective assistance of counsel under Strickland.

ASSIGNMENTS OF ERROR NOS. 2 & 3:

By these assignments, defendant contends that the trial court erred in refusing to allow trial counsel’s file to be proffered or introduced as evidence at the evidentiary hearing.
In State v. Hunter 614 So.2d 332 (La.App. 4th Cir.1993), this court ordered that the trial court reconsider defendant’s claim that his counsel was ineffective after the trial counsel reviewed the trial counsel’s complete file. The trial court reviewed this file before concluding that defendant was not denied the effective assistance of counsel. Accordingly, these assignments of error are moot.

ASSIGNMENT OF ERROR NO. h:

By this assignment, defendant contends that the trial court erred in not completing the motion to suppress identification filed by him.
| ^Apparently, the motion to suppress the identification was never ruled upon prior to trial. The hearing on this motion was continued when Ms. Vanessa Causey did not appear. The trial court held open the motion and completed it the day of trial apparently by allowing Ms. Causey and Det. Jacklean Davis to testify regarding Ms. Causey’s identification of the defendant’s photograph. Defendant cites no prejudice from the trial court’s decision to hold this motion open pending trial. Defendant does not allege that the identification was suggestive nor does he contend that he was denied the ability to adequately prepare for trial without knowing if this identification would be admitted. Accordingly, because defendant was not harmed by the trial court’s decision, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 5:

By this assignment, defendant contends that the evidence produced at trial was insufficient to support the jury’s verdict of guilty as charged of second degree murder.
In evaluating the sufficiency of evidence to support a conviction, an appellate court must determine, whether viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could *1033 have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Heck, 560 So.2d 611 (La.App. 4th Cir.1990), writ denied, 566 So.2d 395 (La.1990). When the conviction is based on circumstantial evidence, La.R.S. 15:438 provides that such evidence must exclude every reasonable hypothesis of innocence. State v. Langford 483 So.2d 979 (La.1986). La.R.S. 15:438 does not establish a stricter standard of review than the more general “rational jurors reasonable doubt formula”; it is merely an evidentiary guide for the jury when considering circumstantial evidence. State v. Porretto, 468 So.2d 1142 (La.1985).
Nevertheless, the reviewing court may not disregard its duty to consider whether the evidence is constitutionally sufficient simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution, but must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the Inevidence, the rational triers view of all the evidence most favorable to the prosecution must be adopted. The fact finders discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; State v. Green, 588 So.2d 757 (La.App. 4th Cir.1991).
Defendant was charged with and convicted of second degree murder which is defined in pertinent part as: “the killing of a human being: 1) when the offender has a specific intent to kill or to inflict great bodily harm.” La.R.S. 14:30.1.
In the present case, the murder weapon was found in defendant’s residence two and one-half months after the crime. A witness testified she saw defendant walking away from the scene of the shooting with a gun in his hand. There was no evidence that a struggle took place or that defendant acted in self defense. The victim died as a result of a gunshot wound to the chest fired from close range. The witness named defendant and subsequently made a positive identification of him in photographic line-up and at trial. Viewing this evidence in the light most favorable to the prosecution, a rational of trier of fact could conclude that the state proved every essential element of the crime beyond a reasonable doubt. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 6:

By this assignment of error (contained in defendant’s supplemental brief) defendant contends that he was denied a fair trial because the state withheld Brady material. Defendant points to four portions of the grand jury transcript which he alleges contains exculpatory information which should have been disclosed under Brady v. Maryland: (1) Vanessa Causey’s statements that she contacted Det. Jacklean Davis rather than Det. Davis contacting her; (2) Vanessa Causey’s cautious testimony regarding the identify of the perpetrator; (3) Vanessa Cau-sey’s grand jury testimony that she did not see the appellant with a gun; and, (4) Ms. Causey’s grand jury testimony regarding the illicit drugs found in a brown cap near the body of the victim.
The due process clause of the Fourteenth Amendment to the United States Constitution requires the disclosure, upon request, of evidence which is favorable to the | ^accused when the evidence is material to guilt or punishment. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d. 215 (1963). This rule has been expanded to include evidence which impeaches the testimony of a witness where the reliability or credibility of the witness may be determinative of guilt or innocence. Giglio v. U.S., 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The Brady rule is based on due process of law. “[T]he prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial, that is, evidence favorable to the defendant which is material to.guilt or punishment.” State v. Rosiere, 488 So.2d 965, 970 (La.1986). The test for determining materiality was established in *1034 United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). “The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A ‘reasonable probability is a probability sufficient to undermine confidence in the outcome.” Bagley, 473 U.S. at 682, 105 S.Ct. at 3383. The test for determining materiality is the same whether or not the defense makes a pretrial request for exculpatory evidence. Id.
In the present case, three of the four portions of Vanessa Causey’s grand jury testimony referred to by defendant are not relevant to a material issue at trial or were discussed fully at trial. The question of whether Vanessa Causey contacted Det. Jacklean Davis or whether Det. Davis contacted Ms. Causey was explored at trial. Also, it does not appear that the question of who contacted whom would affect the outcome of trial; except, however, if defendant can prove that Vanessa Causey was informed that he was arrested and found with the murder weapon prior to her statement to Det. Davis that he was the perpetrator. If that was the ease, then defendant could show that Vanessa Causey’s identification of him was influenced by her knowledge that defendant was found with the weapon. However, defendant has not provided any evidence to support this chronology of events.
Likewise, Vanessa Causey’s testimony regarding her identification of the perpetrator does not present any information which was not previously disclosed at trial. At trial, Ms. Causey testified that she did not identify defendant until after she saw his face as he rodej^past in a car. During the grand jury proceedings she testified she did not see his face before he entered the car. This is not a contradictory statement and therefore would not constitute Brady material. Also, her testimony regarding the drugs found in the brown cap near the victim was substantially similar to the testimony she gave at trial. Both before the grand jury and at trial, she testified she did not believe that the brown cap, which contained two syringes and marijuana belonged to the victim, Gregory Jones. At the grand jury, she testified that “to her knowledge” the victim did not do drugs other than marijuana which was similar to her testimony at trial.
The remaining point of testimony concerns her testimony at the grand jury that she did not see defendant with a weapon yet testified at trial she saw him with a gun in his hand. This prior inconsistent statement to the grand jury made by Vanessa Causey is Brady material. The question of whether defendant was seen possessing a weapon immediately following the shooting is critical, since there are no witnesses to the actual shooting. Ms. Causey is the only person who identified defendant as the person walking from the area of the shooting immediately following the incident. Clearly her testimony at trial that defendant possessed a gun is inconsistent on a material issue to her grand jury testimony that she did not see the appellant with a gun. Accordingly, the state was under an obligation to disclose this prior inconsistent statement to defendant, and their failure to do so violates Brady v. Maryland.
Although the potential for impeaching this key state witness may have been determinative of defendant’s guilt or innocence, it does not appear that the result of the trial would have been different even had the state disclosed this information. Vanessa Causey identified defendant by name to Det. Davis, identified him in a photographic line-up several months later, and identified him at trial as the person she saw walking away from the murder scene after the three shots were fired. The murder weapon was found in defendant’s residence. Therefore, we are unable to say that the failure to disclose the grand jury testimony, by itself, denied defendant a fair trial or that a different verdict would have resulted had this evidence been disclosed.
_|uWe also reject defendant’s argument that the cumulative effect of the Brady violation and trial counsel’s ineffective performance denied him a fair trial. For the reasons previously discussed, we are unable to say there is a reasonable probability that the outcome of the trial would have been any *1035 different had counsel’s performance not been deficient and had defendant received the Brady material. We find no merit to these assignments of error.
For the foregoing reasons we affirm defendant’s conviction and sentence.

AFFIRMED.

. Assignment of Error No. 6 addresses the issue of the State's failure to turn over to the defense Ms. Causey’s testimony at the grand jury proceeding. Defense counsel specifically requested the transcript of the grand jury proceedings but the State responded that he was not entitled to this information.