669 So.2d 517 (1996)
STATE of Louisiana
v.
Terence GUY.
No. 95-KA-0899.
Court of Appeal of Louisiana, Fourth Circuit.
January 31, 1996.
*519 Harry F. Connick, District Attorney of Orleans Parish, Karen Godail Arena, Assistant District Attorney of Orleans Parish, New Orleans, for the State of Louisiana.
Laurie A. White, Anne T. Turissini, Law Office of Laurie A. White, New Orleans, for Defendant/Appellant.
Before CIACCIO, PLOTKIN and MURRAY, JJ.
*520 PLOTKIN, Judge.
On June 2, 1994, Terence Guy was charged by grand jury indictment with the February 7, 1994 second degree murder of Norman Shepard in violation of La.R.S. 14:30.1. At his arraignment on June 13, 1994, he pleaded not guilty. On October 17, 1994, he was found guilty as charged by a twelve-member jury. On December 9, 1994, he was sentenced to life imprisonment without benefit of probation, parole, or suspension of sentence. He appeals his conviction and sentence.
At trial, Marvin Gourm, a friend of the victim, testified that Norman Shepard was employed as a music teacher at Francis T. Nicholls Senior High School, and that the victim was involved with several local gospel groups. Gourm testified that Shepard was at a church rehearsal before he was killed on February 7, 1994. Gourm testified that Shepard drove a 1982 Ford Mustang, and identified a photograph of this car. Gourm testified that family and friends had donated money to Gaza Missionary Baptist Church for a memorial scholarship.
Cassandra Rivers, a friend of the victim, testified that she participated in a choir that Shepard directed. Rivers testified that she attended choir practice with Shepard at Gaza Missionary Baptist Church on February 7, 1994. Rivers testified that Shepard drove her home from church after which she did not see him again.
Dr. Paul McGarry, a forensic pathologist with the Orleans Parish Coroner's Office, testified that he performed an autopsy of Shepard on February 8, 1994. McGarry testified that Shepard had a single gunshot wound entering the back of his head, above and behind his right ear, which was the cause of death. McGarry identified the bullet that he removed from the wound. McGarry testified that the entry wound was larger than one normally associated with this type of bullet. McGarry testified that Shepard's face suffered abrasions consistent with an automobile accident.
Officer Raymond Radosti of the New Orleans Police Department testified that on February 7, 1994, he and his partner, Officer Mark Roussell, responded to an aggravated battery by shooting in the 1400 block of Milton Street. Officer Radosti testified that when they approached a red Mustang with a shattered rear window at the scene, he saw the driver, who appeared to be breathing, slumped in the front seat, leaning toward the passenger side with a gunshot wound to the back of his head. Officer Radosti testified that he told the dispatcher to send emergency medical assistance. Officer Radosti testified that the red Mustang appeared to have wrecked its front fender in a collision with a parked car. Of the approximately eighteen people at the scene, Officer Radosti testified that none provided any information.
Detective Byron Adams of the New Orleans Police Department's Homicide Division testified that he investigated a homicide that occurred on February 7, 1994, in the 1400 block of Milton Street. Detective Adams testified that he found a Mustang, whose rear window was shattered and which had run into a parked vehicle, and that the Mustang contained Shepard, who was seated in the driver's seat but slumped over into the front passenger seat, and who had a gunshot wound to the back of the head. Detective Adams testified that detectives canvassed the neighborhood and found persons who had heard gunshots but had not witnessed the shooting.
Officer Chana Pichon of the New Orleans Police Department testified that she investigated the homicide scene. Officer Pichon identified the photographs she took and the blood sample she collected from the front passenger seat of the Mustang. Officer Pichon testified that she did not find any gun casings or fingerprints.
Officer Kenneth Leary, a firearms examiner for the New Orleans Crime Laboratory, testified that he could not determine whether the bullet removed from Shepard was a nine millimeter or 0.38 caliber bullet because it was deformed.
Officer Michael Harrison of the New Orleans Police Department testified that on April 13, 1994, he and his partner, Officer Gabriel Favaroth, arrested Terence Guy in an apartment at the Calliope Project. Officer Harrison identified Guy in court.
*521 Reginald Hawkins, the only eyewitness to the shooting, testified that he was on his porch at 1448 Milton Street on February 7, 1994, at approximately 10:30 p.m. when he heard loud music and saw a person he knew as "T." walking across the street carrying a radio. When a red car honked at "T.", Hawkins saw him switch the radio from his right to left hand, pull out a gun from his right side, and shoot at the rear of the car three times in close succession. Hawkins testified that after the car ran into another car, "T." approached within eight to ten feet of him and told him to "Take [his] punk ass inside and don't say nothing." Hawkins testified that he went inside and did not speak to the police until he was picked up on a municipal attachment on April 12, 1994, because he was afraid of the shooter. Hawkins testified that he identified "T." in a photographic line-up. Hawkins testified that he did not learn there was a Crime Stoppers reward until after he made his identification, and he testified that he was not promised anything regarding his municipal attachment in exchange for the identification. Hawkins testified that he has used the names Reginald Wilson and George Clark, that he was serving time for battery, and had pleaded guilty to tampering and was sentenced to sixty days with credit for time served. Hawkins identified Guy in court.
Sergeant Chris Peleteri, Crime Stoppers coordinator for the New Orleans Police Department, testified that Hawkins was paid $500 after Guy was indicted and that Hawkins was eligible to receive $500 more after testifying at trial. Sergeant Peleteri testified that he opted to divide the fee to provide an incentive for Hawkins to appear to testify.
Detective Jimmy Stewart of the New Orleans Police Department Homicide Division testified that on April 12, 1994, he interviewed Hawkins who had been picked up by Officer Chad Stokes for a municipal violation. Detective Stewart testified that he did not offer Hawkins any Crime Stoppers money before taking a statement or make any promises regarding his municipal attachment. Detective Stewart testified that Hawkins identified Guy from a photographic line-up after which Stewart informed him that there was Crime Stoppers money available in this case. Detective Stewart testified that he obtained a warrant for Guy's arrest.
It was stipulated that a drawing by Sergeant Morales accurately reflected the crime scene but was not drawn to scale.
A review of the record for errors patent reveals none.
In his first assignment of error, appellant contends that there was insufficient evidence to convict him of second degree murder (1) because it was not proved that he had specific intent to kill or to inflict great bodily injury and (2) because Hawkins's testimony was unreliable.
There is sufficient evidence to support a conviction if, after viewing the record as a whole in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817, 820 (La.1987); see also State v. Mussall, 523 So.2d 1305, 1311 (La.1988).
The appellant was convicted of second degree murder, which is defined as the killing of a human being with specific intent to kill or to inflict great bodily harm. La.R.S. 14:30.1. Specific intent is defined as: "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10; see also State v. Lindsey, 543 So.2d 886, 902-03 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990). Specific intent is an ultimate legal conclusion that can be inferred by the fact finder from the pointing of a gun at close range and pulling of the trigger. State v. Williams, 383 So.2d 369, 373 (La.1980), cert. denied, 449 U.S. 1103, 101 S.Ct. 899, 66 L.Ed.2d 828 (1981); State v. Procell, 365 So.2d 484, 492 (La.1978), cert. denied, 441 U.S. 944, 99 S.Ct. 2164, 60 L.Ed.2d 1046 (1979).
Hawkins testified that he saw Guy, whom he knew, shoot three times at the rear of the car the victim was driving. The driver was killed by a shot to the back of his head. Hawkins testified that Guy warned him not *522 to tell anyone about the shooting. Viewing this evidence in the light most favorable to the prosecution, the jury could have found that the defendant had the requisite specific intent to kill or to inflict great bodily harm, and that the defendant was guilty beyond a reasonable doubt of second degree murder. The fact that the victim was killed by only a single bullet when three shots were fired does not negate the fact that Guy intentionally aimed and fired three shots in close succession directly at the victim. Under these circumstances, the evidence of specific intent is sufficient to convict Guy of second degree murder.
The defense invokes State v. Heck, 560 So.2d 611 (La.App. 4th Cir.), writ denied, 566 So.2d 395 (La.1990), to urge this Court to reduce Guy's second degree murder conviction to a conviction of manslaughter. In Heck, a woman shot her boyfriend through a door killing him some time after a heated argument. Id. at 613. She claimed that the gun was accidentally discharged and that she intended only to frighten him. Id. at 614. This Court affirmed a modified conviction of manslaughter, finding that her strong emotional reaction to the shooting was inconsistent with the specific intent to kill. Id. at 616. In contrast, Guy exhibited no such reaction, and instead ordered the witness to go back inside his house and keep quiet. Moreover, there is no evidence of passion immediately caused by provocation sufficient to deprive Guy of his self-control. It appears that Guy simply became irritated when the victim honked his car horn and chose to kill the driver.
The defense acknowledges that specific intent is inferred when a defendant shoots directly at a victim but argues that Guy did not intend to hit the car's driver. The Louisiana Supreme Court upheld a second degree murder conviction when a defendant shot and killed a person but claimed that he only intended to frighten two persons by firing a rifle over their heads. State v. Mart, 419 So.2d 1216, 1217 (La.1982). The First Circuit, in State v. Kennington, 515 So.2d 521, 523-24 (La.App. 1st Cir.1987), affirmed a conviction for second degree murder in which the shooter testified that she fired into the air only intending a warning shot.
Appellant also contends that the State's case is based completely upon the testimony of a convicted felon who was paid by Crime Stoppers for his testimony. Credibility determination is within the sound discretion of the trier of fact and will not be disturbed unless clearly contrary to the evidence. State v. Vessell, 450 So.2d 938, 943 (La.1984); State v. Jones, 537 So.2d 1244, 1249 (La.App. 4th Cir.1989). The jury was aware of Hawkins's prior convictions, his incarceration at the time of trial, and that he had been paid $500 and would be paid an additional $500 by Crime Stoppers. Hawkins testified that he was not aware of the reward before he gave his statement to the police and that he did not report the incident earlier because he was intimidated by the defendant.
From the testimony of the only witness, a reasonable jury could believe that Guy committed second degree murder. This credibility determination has not been shown to be clearly contrary to the evidence. Nor do we find in the record the sort of numerous eccentricities or unusual coincidences that would compel a rational fact finder to have a reasonable doubt as to Guy's guilt. See Mussall, supra, at 1311-1312. This issue, however, is discussed further in assessing appellant's third and fourth assignments of error.
After reviewing the entire record in the light most favorable to the prosecution, we conclude that the State proved the appellant's guilt beyond a reasonable doubt. This assignment of error is without merit.
In his second assignment of error, the appellant contends that the trial court erred in summarily denying his motion for a new trial without a hearing because the jury's verdict was contrary to the law and the evidence presented. This assignment of error is based upon the assertions (1) that the State's case against Guy is suspect because it was based upon Hawkins's testimony and (2) that a properly filed motion for new trial must be tried contradictorily.
*523 The denial of the motion for new trial can be reversed if it is found to be an arbitrary and palpable abuse of the trial court's discretion. State v. Tyler, 342 So.2d 574, 588 (La.), cert. denied, 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227 (1977); State v. Clark, 581 So.2d 747, 751-52 (La.App. 4th Cir.1991), writ denied, 590 So.2d 63 (La. 1991); see also State v. Talbot, 408 So.2d 861, 875 (La.1980). The trial judge is obliged to make an independent assessment of the weight of the evidence as a thirteenth juror when a defendant moves for a new trial on the ground that the verdict is contrary to the law and the evidence in accordance with La. C.Cr.P. art. 851(1). See, e.g., State v. Long, 590 So.2d 694, 702 (La.App. 3d Cir.1991). There is nothing in the record to indicate that the trial judge failed to apply the proper standard in evaluating the weight of the evidence or abused his discretion in denying Guy's motion for a new trial.
Code of Criminal Procedure article 852 provides:
A motion for new trial shall be in writing, shall state the grounds upon which it is based, and shall be tried contradictorily with the district attorney.
Moreover, appellant urges that the Louisiana Supreme Court in State v. Molinario, 383 So.2d 345 (La.), cert. denied, 449 U.S. 882, 101 S.Ct. 232, 66 L.Ed.2d 106 (1980), found error in the denial without contradictory hearing of a motion for new trial. In Molinario, the Louisiana Supreme Court found that a trial judge should have held a full evidentiary hearing in response to a defendant's motion for new trial based upon newly discovered evidence. Id. at 353. In State v. Vinet, 352 So.2d 684, 689 (La.1977), the Louisiana Supreme Court stated:
Although Article 852 requires that a motion for a new trial "shall be tried contradictorily with the district attorney" the facts of this case do not indicate that the ex parte denial prejudiced the defendant.
Initially, it should be observed that the requirement that the motion be tried contradictorily with the district attorney is obviously designed to afford the State an opportunity to contest the allegations of such a defense motion. In a case where the defense has moved for a new trial, therefore, only the State would be in a position to complain that the motion was not tried contradictorily with the district attorney. The defense under these circumstances has the advantage of a unilateral presentation.
In contrast with the motion made upon newly discovered evidence in Molinario, Guy's motion for new trial was based on Criminal Procedure article 851(1) which section states simply that "The verdict is contrary to the law and the evidence." Guy's motion for new trial reiterates issues thoroughly considered in the trial on the merits; no new facts or law reasonably calculated to change the outcome were presented. Consistent with the Vinet decision, we find that under the circumstances Guy was not prejudiced by the ex parte denial of his motion for new trial. This assignment of error is without merit.
In his third assignment of error, appellant contends that the trial judge erred when he denied appellant's motion to suppress Hawkins's photographic identification of him because it was unreliable. This assignment of error also raises issues discussed in the first.
The appellant bears the burden of proving that the identification was suggestive, and, if so, that the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification. See Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. West, 582 So.2d 889, 890 (La.App. 4th Cir.1991). An identification procedure is unduly suggestive if it focuses attention on the defendant. State v. Robinson, 386 So.2d 1374, 1377 (La.1980). Even a suggestive out of court identification will be admissible if it is found reliable under the totality of the circumstances. Manson, supra; State v. Guillot, 353 So.2d 1005, 1008-09 (La.1977), writ denied, 367 So.2d 864 (La.1979). In determining whether an out of court identification is reliable, several factors are considered: the victim's opportunity to view the perpetrator at the time of the crime, the attentiveness of the victim during the crime, the accuracy of any prior description, the victim's certainty in identification, and *524 the length of time between the crime and identification. Manson, supra.
During trial but out of the presence of the jury, a hearing on the motion to suppress the identification was held. Hawkins testified that he told the police he knew who killed Shepard and identified this person from a photographic line-up as the man he knew as "T." One of the detectives had told Hawkins that this person's name was Terence Kennedy before the identification. Hawkins admitted that he had been picked up on a municipal attachment on the day that he made the identification, and that after he made the identification he was not jailed. Detective Stewart testified that he did not tell Hawkins that he may be eligible for a reward until after the identification or make any promises regarding his municipal attachment. Detective Stewart told Hawkins to present himself to municipal court on the attachment.
Although it is true that Hawkins should not have been told the name Terence Kennedy prior to the identification, such action is not sufficient to make the entire identification unduly suggestive. Cf. State v. Robinson, 386 So.2d 1374, 1377 (La.1980). Even if suggestive, the identification was reliable. Hawkins testified that he knew "T." before the murder. He witnessed the murder from his porch and was threatened by the perpetrator from a distance of eight to ten feet. He positively identified a photograph of Guy as "T." Although two months had elapsed between the murder and the identification, the totality of the circumstances indicates that the identification was reliable. This assignment of error is without merit.
In his fourth assignment of error, appellant contends that hearsay evidence was introduced at trial. Specifically, he objects to the testimony of Sergeant Peleteri that Crime Stoppers had received information that Terence Kennedy had committed the murder. Sergeant Peleteri testified as follows on redirect:
BY MS. ANDREWS:
Q. Officer Peleteri, are there occasions when the $1,000 is split by more than one witness?
A. Yeah, we do that a lot.
Q. And are there occasions when people give Crime Stoppers tips and yet they are not paid Crime Stoppers money?
A. There are some people that aren't interest in the money. There is a lot of cases that way, too.
Q. Are there requirements that a person be an eyewitness to a crime to receive Crime Stoppers money?
A. No.
Q. And if a person gives a tip but is not an eyewitnesslet me rephrase that. Just because money was paid to Reginald Hawkins in this case doesn't mean that there weren't other Crime Stoppers tips.
MS. WHITE:
Objection, your Honor, first as leading the witness, and second, it's irrelevant.
THE COURT:
I would sustain that.
BY MS. ANDREWS:
Q. If you are contacted or receive information from more than one person, whose determination is it whether one person gets the money or it's split?
A. Well, the final determination
MS. WHITE:
Objection, your Honor. I don't think that's even relevant in this case.
MS. ANDREWS:
Miss White asked a question which is misleading.
THE COURT:
I think you're asking him to speculate. I think that's the nature of your question. I would sustain her objection.
BY MS. ANDREWS:
Q. Did you receive information from more than one person in this case?
MS. WHITE:
Objection, your Honor.
THE COURT:
As to that general question, yes or no, I'll let him answer that. I'd overrule your objection.
BY MS. ANDREWS:

*525 Q. Did you receive information from more than one person in this case?
A. Yes.
Q. How many people?
MS. WHITE:
Objection, your Honor. What's the probative value?
THE COURT:
I really think you ought to limit that.
BY MS. ANDREWS:
Q. And it was your decision to recommend to Mr. Hawkins for the $500 that he has received?
A. For that money he has received and any other money.
Q. Thank you.
On recross, Officer Peleteri testified as follows:
BY MS. WHITE:
Q. Officer Peleteri, you were given more than one name in this case too, weren't you?
A. Yes, ma'am.
Q. Okay. And you're not saving that other $500 for another witness, are you? It's earmarked for Reginald Hawkins, isn't it?
A. Yes, ma'am.
On redirect, Officer Peleteri then testified:
BY MS. ANDREWS:
Q. You were not given any tips which did not include the name Terence Guy? Each tip you received did include the name Terence Guy, did it not?
A. No. Can I explain it?
THE COURT:
Yes, sir, you may.
THE WITNESS:
The tips we receivedthere was two names, and it was the name that the defendant goes by, another name.
BY MS. ANDREWS:
Q. Which name is that?
A. Kennedy.
Q. Thank you.
Appellant contends that through this testimony the State impermissibly bolstered Hawkins's identification of Guy as the perpetrator.
The Louisiana Supreme Court in State v. Wille, 559 So.2d 1321, 1331 (La.1990) stated:
When an out-of-court statement, such as information received by a police officer during an investigation of a crime, has both an impermissible hearsay aspect and a permissible nonhearsay aspect, the issue of relevancy becomes significantly interrelated with the hearsay issue. If the nonhearsay content of the statement has little or no relevance, then the statement should generally be excluded on both relevance and hearsay grounds. Marginally relevant nonhearsay evidence should not be used as a vehicle to permit the introduction of highly relevant and highly prejudicial hearsay evidence which consists of the substance of an out-of-court assertion that was not made under oath and is not subject to cross-examination at trial.
In State v. Hearold, 603 So.2d 731, 737-38 (La.1992), the Louisiana Supreme Court added:
Generally, an explanation of the officer's actions should never be an acceptable basis upon which to admit an out-of-court declaration when the so-called "explanation" involves a direct assertion of criminal activity against the accused.... Absent some unique circumstances in which the explanation of purpose is probative evidence of a contested fact, such hearsay evidence should not be admitted under an "explanation exception." The probative value of the mere fact that an out-of-court declaration was made is generally outweighed greatly by the likelihood that the jury will consider the statement for the truth of the matter asserted.
Unlike in Wille, the propriety of actions taken by the officers of Crime Stoppers was made relevant by the defense's theory that Hawkins was a wholly unreliable witness who was paid to fabricate his testimony against Guy by Crime Stoppers. Cf. State v. Spears, 94-0327, p. 6-7 (La.App. 4th Cir. 12/15/94), 647 So.2d 1313, 1316, writ denied, 95-0136 (La. 5/19/95), 654 So.2d 1353. Unlike in Hearold, the officer's testimony did not go beyond the scope of the questions about the substance of the investigation, nor did the *526 State's witnesses throughout the trial utilize a series of unresponsive answers to get improper and damaging hearsay evidence before the jury. In this trial, as in Spears, we find that the officer's explanation of Crime Stoppers was not used as a passkey to bring before the jury the substance of out of court information that would otherwise be barred by the hearsay rule.
Moreover, during Sergeant Peleteri's testimony at trial, the defense first objected on the basis that the question was leading and the information to be elicited was irrelevant, second on the basis of relevance, third without giving any basis, fourth that the information elicited lacked any probative value, and fifth to the officer not first answering simply yes or no before explaining his answer. Defendant's failure to object contemporaneously to hearsay precludes review of this issue on appeal. La.C.Cr.P. art. 841; see also State v. Cashen, 544 So.2d 1268, 1274-75 (La.App. 4th Cir.1989). Additionally, this testimony was not the only evidence of the offense. See State v. Lubrano, 563 So.2d 847, 849 (La.1990). Error, if any, in admitting it was harmless beyond a reasonable doubt. This assignment of error is without merit.
In his fifth assignment of error, appellant contends that the jury was improperly instructed regarding specific intent. This assignment was neither briefed nor argued. Accordingly, it is considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.14.
In his sixth assignment of error, appellant contends that his sentence to life imprisonment is unconstitutionally excessive under State v. Dorthey, 623 So.2d 1276 (La. 1993). A trial judge has great discretion in sentencing within statutory limits. State v. Trahan, 425 So.2d 1222, 1227 (La.1983). When a trial judge determines a sentence from a carefully tailored penalty statute, such as La.R.S. 14:30.1(B), there is a strong presumption that the sentence is within constitutional parameters. Appellant has not succeeded in proving and the record does not clearly show that under the facts of this case the trial judge abused his sentencing discretion. This assignment of error is without merit.
In his last assignment of error, appellant contends that the trial judge erred by failing to advise him of the delays for post-conviction relief at the sentencing hearing, as required by La.C.Cr.P. art. 930.8. In State ex rel. Glover, 93-2330, 94-2101, 94-2197, p. 20-21 (La. 9/5/95), 660 So.2d 1189, 1201, the Louisiana Supreme Court considered the effect of the failure to inform a defendant of the limitations period for post-conviction relief and concluded that Article 930.8 does not bestow an enforceable right on an individual defendant. The court stated (citation omitted):
In our view, Art. 930.8(C), which requires the trial court to inform the defendant of the limitations period for filing an application for post conviction relief, is supplicatory language and does not bestow an enforceable right upon an individual defendant. First, Art. 930.8 was designed to limit the time period for filing applications for post conviction relief to three years (one year for those whose applications would have already been barred by a three year limit) from the finality of the judgment of conviction and sentence. Secondly, Art. 930.8 accomplishes that result by precluding courts from considering an application for post conviction relief unless certain specifically enumerated exceptions apply. Third, while Art. 930.8(A) clearly and unambiguously sets forth the only exceptions to its limitations period, a trial court's failure to inform the defendant of the prescriptive period is not included within the exclusive list of exceptions to the application of the three year period in Art. 930.8(A). Fourth, while Art. 930.8(C) directs the trial court to inform the defendant of the prescriptive period at the time of sentencing, it does not provide a remedy for an individual defendant who is not told of the limitations period. As such, we conclude that while the legislature intended to notify defendants of Art. 930.8's limitations period, the legislature's broader aim was to limit the limitations period for applications for post conviction relief to three years unless certain specific exceptions apply and not to create a remedy for a trial court's failure to inform the defendant *527 of the limitations period. We decline to create such a remedy in the absence of a clear expression of legislative intent in that regard. Accordingly, we hold that Art. 930.8(C) is merely a directive to the trial courts, the violation of which does not bestow an enforceable right in favor of an individual defendant.
This assignment of error is without merit.
Accordingly, appellant's conviction and sentence are affirmed.