KIRBY, Judge.
11 STATEMENT OF THE CASE
By grand jury indictment dated June 5, 1997, Domingo Jenkins, also known as Mike Jenkins, and Louis Jenkins were charged with second degree murder; and, they pleaded not guilty. On February 2-3, 1998, defendants were tried together by a twelve-member jury that found them both guilty as charged. On February 17, 1998, the trial court denied both defendants’ motions for new trial; and, after all delays were waived, defendants were both sen *863 tenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The trial court denied defendants’ motions for reconsideration of sentence.

STATEMENT OF THE FACTS

Officer Joseph Narcisse testified that on April 11, 1997, he responded to a call of a shooting in the 1300 block of Touro Street. When he arrived at the scene, he found Jimal Pope lying on the sidewalk with gunshot wounds to the chest and buttocks. Narcisse testified that he asked Pope what happened and that Pope replied that he was standing near his friend’s car when another friend approached. Pope also told Narcisse that he and this friend began arguing and that the friend | {.produced a gun and shot him. Narcisse testified that Pope told, him that his friend’s name was Mike and that he did not know Mike’s last name. Pope then pointed upstairs to 1302 Touro where a woman was standing and told Narcisse that the woman should know Mike’s name because she was Mike’s girlfriend. Pope died later that day during surgery. Dr. Susan Garcia performed the autopsy, and she testified that the muzzle of the gun that shot Pope had to be very close to him. She recovered a bullet and fragments from Pope’s spinal column. She described the wound on Pope’s buttocks as an abrasion, not a gunshot wound.
The woman that Pope pointed to was Raynette Williams; and, she testified that she was living with Domingo “Mike” Jenkins on Touro on April 11, 1997. She also testified that Pope and Keith Donaldson lived downstairs, but did not really know them. She stated that at the time of the shooting, she was in her apartment listening to the radio and that when she heard gunshots, she ran and grabbed her child who was sitting near the open doorway. She further stated that she did not look outside and that she heard two or three gunshots. Ms. Williams said that after she put down her child, she went back to the door, looked out, and saw Pope lying on the ground. She denied seeing either Mike or his brother shoot Pope. She admitted giving the police a statement in which she told them that she saw both Mike and Louis shooting at the victim; but, she testified that she gave this statement because it was what the police wanted to hear and that she had been threatened with perjury charges.
Keith Donaldson testified that he and Pope were working on his car and Mike Jenkins was also out there with them. He stated that everyone was laughing and joking and that Louis Jenkins, whom Donaldson had seen twice before, rode up on a bicycle. Donaldson testified that Louis gave Mike a gun and that he saw 13that Louis had a gun also. He further testified that shortly afterward, Mike began cursing at Pope, who responded by asking Mike if he had gotten the gun for him (Pope). Donaldson said that he urged Pope to go inside and that Mike and Louis started to go upstairs. He stated that Mike turned around and shot at Pope and that Mike and then Louis started to come down the stairs. Donaldson said that he heard two more shots and he saw that both Mike and Louis had their guns raised. He further stated that he continued to try to get Pope to come inside and that they were at the back of his car when both defendants got downstairs. Donaldson heard another shot and then he heard Pope holler, “Ow.” He said that Pope could not tell him where he (Pope) had been shot and that Louis walked up and put his gun to Pope’s head. Donaldson testified that he convinced Louis to leave Pope alone and that Louis and Mike then left.
Avery Gardner testified that he lived across the street and that on the day of the shooting he heard gunshots. He further testified that he looked out of his window and saw Mike Jenkins and his brother, whom he admitted that he did not know at the time as Mike Jenkins’ brother, fire at Pope. He chose their pictures out of a photographic lineup.
Talsula Watson testified that she lived next door and was outside playing with her *864 niece when she saw three men arguing. She further testified that she heard shots and saw Mike Jenkins with a gun. She also said that she did not see Louis Jenkins.

ASSIGNMENT OF ERROR NO. 1 (BOTH DEFENDANTS)

In this assignment of error, both defendants complain that the State failed to prove their guilt beyond a reasonable doubt. They argue that the inconsistencies in [4the testimony of the various witnesses show that they were not the ones who shot Pope.
The standard for reviewing a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have all of the essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Rosiere, 488 So.2d 965 (La.1986). The reviewing court is to consider the record as a whole and not just the evidence most favorable to the prosecution; and, if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La.1988). Additionally, the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Id. The trier of fact’s determination of credibility is not to be disturbed on appeal absent an abuse of discretion. State v. Cashen, 544 So.2d 1268 (La.App. 4th Cir.1989).
Defendants were found guilty of second degree murder which is defined as the killing of a human being with the specific intent to kill or inflict great bodily harm. La. R.S. 14:30.1; State v. Guy, 95-0899 (La.App. 4 th Cir. 1/31/96), 669 So.2d 517, writ denied 96-0388 (La.9/13/96), 679 So.2d 102.
All of the inconsistencies in the testimony of the prosecution witnesses were brought to the attention of the jury, and the jury must have found the testimony sufficiently consistent and credible in finding both defendants guilty as charged. Neither defendant has shown that the jurors abused their discretion in their credibility finding. Donaldson and Gardner both testified that Mike and Louis Jenkins shot at Pope; and, Ms. Watson testified that she saw Mike shoot at Pope. | ¡¡Moreover, the victim himself named Mike as his shooter and specified that the “Mike” he meant had as his girlfriend Pope’s upstairs neighbor who was at that time looking down at the scene. No other assailants were identified by any of the witnesses. The State proved beyond a reasonable doubt that both Domingo “Mike” Jenkins and Louis Jenkins committed the second degree murder of Jimal Pope. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2 (LOUIS JENKINS)

In this assignment of error, Louis Jenkins alone complains that the trial court erred in imposing an excessive sentence. He argues that the mandatory life sentence is excessive as applied to him and that the trial court failed to mention either aggravating or mitigating circumstances when it imposed the sentence.
Although a sentence is within the statutory limits, the sentence may still violate a defendant’s constitutional right against excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.1979). A sentence is unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the needless and purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Lobato, 603 So.2d 739 (La.1992); State v. Telsee, 425 So.2d 1251 (La.1983).
In State v. Guy, 95-0899 (La.App. 4 th Cir. 1/31/96), 669 So.2d 517, writ denied 96-0388 (La.9/13/96), 679 So.2d 102, the *865 defendant argued that his mandatory life sentence for second degree murder was excessive under State v. Dorthey, 623 So.2d 1276 (La.1993). This court rejected the defendant’s argument, stating:
|fiWhen a trial judge determines a sentence from a carefully tailored penalty statute, such as La. R.S. 14:30.1(B), there is a strong presumption that the sentence is within constitutional parameters. Appellant has not succeeded in proving and the record does not clearly show that under the facts of this case the trial judge abused his sentencing discretion.
Id. at p. 14, 669 So.2d at 626.
In cases involving mandatory sentences under the Habitual Offender Law, it has been held that such sentences are presumed constitutional and that the defendant bears the burden of rebutting the presumption that the mandatory minimum sentence is constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Short, 96-2780 (La.App. 4 th Cir. 11/18/98), 725 So.2d 23. In such cases, the court may depart from the mandatory minimum sentence only if it finds that there is clear and convincing evidence in the particular case before it that would rebut the presumption of constitutionality. State v. Johnson, 97-1906 at p. 7, 709 So.2d at 676.
In the present case, Louis Jenkins has not proven that the trial judge abused his discretion in imposing the mandatory life sentence. He has also not rebutted the presumption that the sentence is unconstitutionally excessive under the facts of this case. This assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NO. 1 (LOUIS JENKINS)

In this pro se assignment of error, defendant complains that he was denied due process because he was not provided with a complete trial transcript. He specifically complains that he was denied the right to review the record for errors during closing arguments and jury instructions. He asserts that there was a great likelihood that during the State’s closing argument and the trial court’s jury | .¡-instructions that inadmissible argument and erroneous definitions of responsive verdicts were allowed. The trial transcript contains excerpts from the closing arguments where objections were noted, but no assignments of error as to the objections made during closing argument have been raised by Louis Jenkins. As to the jury instructions, the trial transcript notes that no objections were made; and, because no objections were made, Louis Jenkins cannot assign as error any allegedly erroneous jury instructions given by the trial court. La.C.Cr.P. arts. 801, 841. Therefore, this assignment of error is without merit.
We affirm the convictions and sentences for Domingo “Mike” Jenkins and Louis Jenkins.
AFFIRMED.