841 So.2d 85 (2003)
STATE of Louisiana
v.
Luqman A. RASHEED.
No. 2002-KA-2100.
Court of Appeal of Louisiana, Fourth Circuit.
February 26, 2003.
*87 Harry F. Connick, District Attorney, Leslie Parker Tullier, Assistant Attorney General, New Orleans, LA, for Plaintiff/Appellee.
Laura Pavy, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge TERRI F. LOVE, Judge DAVID S. GORBATY, Judge LEON A. CANNIZZARO, JR.).
TERRI F. LOVE, Judge.
Defendant Luqman Rasheed was charged by bill of information on October 31, 2000, with one count of aggravated battery, in violation of La. R.S. 14:34. After a jury trial, the defendant was found guilty of the lesser included charge of second-degree battery. The defendant was sentenced to four years in the Department of Corrections. Two of the four years were suspended with active probation and restitution of two thousand dollars to the victim. After a multiple bill hearing, the defendant was ad judged a second felony offender. The trial court vacated its previous sentence of four years, and re-sentenced the defendant to two and one-half years in the DOC with credit for time served. The trial court also ordered the defendant to pay restitution to the victim. The defendant now appeals his conviction and sentence arguing (1) the evidence was insufficient to support his conviction of second-degree battery and (2) his sentence is constitutionally excessive.
FACTS AND PROCEDURAL HISTORY
Officer Albert Hynes, of the New Orleans Police Department, testified on August 26, 2000, he responded to a dispatch call to what was initially thought to be a traffic accident on the eastbound I-10 high rise. As the officer headed to the location, dispatch gave him additional information that something else may have occurred. Another officer, who reached the scene before Officer Hynes, advised the dispatcher that a battery of some sort had occurred, and that there was a victim suffering from severe head injuries. The victim's vehicle was parked facing westbound at the top of the eastbound Downman Road exit to the I-10 high rise. Once Officer Hynes arrived on the scene during the course of his investigation he learned that the victim, Drexel Landry, had been struck in the head with an object, and the perpetrator, later identified as the defendant, had run down the exit ramp. Officer Hynes received a radio transmission that a man fitting the defendant's description was being detained at the bottom of the exit ramp by an off duty officer.
Officer Hynes testified that the incident began when the victim stopped to purchase gasoline at the defendant's Texaco station located at 6500 Downman Road. It was alleged that the victim filled his vehicle with gas and drove away without paying for it. The defendant closed his station and tried to catch the victim. The defendant found the victim at the intersection of Downman Road and Chef Menteur Highway. At the intersection, the defendant exited his vehicle and entered the bed of the victim's pick-up truck. The bed of the truck contained cinderblocks, concrete, and 2x4 pieces of wood. The defendant threw a cinder block through the rear windshield of the truck. The victim then drove up the *88 exit ramp. At the top of the ramp the victim fell out of his vehicle, and the defendant struck him with one of the 2x4 boards knocking him unconscious. Once the altercation ended, the defendant testified he walked down the exit ramp where Detective Neeley detained him and he was subsequently arrested.
Officer Hynes testified that on two occasions he and other officers searched the area under the exit ramp, but they were unable to find the object, believed to be a 2x4 piece of wood, used to injure the victim.
Dr. Lola Dunbar, Emergency Room Attending Physician at Charity Hospital, testified that the victim arrived at the hospital unconscious and unable to respond to questioning or stimuli. He was suffering from apparent head injuries. The victim was placed on a respirator. A physical examination revealed the victim had a contusion on his right frontal temporal area, a contusion in the left eyebrow area, swelling of the left jaw, and depressed neurological function. A CAT scan revealed the victim had bleeding on the left side of his brain, a cerebral hemorrhage, a parietal hemorrhage, a build up of fluid in the separation of the left and right sides of the brain, a build up of fluid between the outer covering of the brain and the skull from tears in the covering of the brain, and swelling of the brain.
The victim remained comatose for approximately three days; he remained on the respirator for ten days; and he was hospitalized for approximately four months. As a result of the incident the victim has difficulty with speech and walking.
The defendant pled not guilty at his November 13, 2000, arraignment. On November 6, and 8, 2001, the defendant was tried but the six-person jury was unable to reach a verdict. On March 26, and 28, 2002, the defendant was re-tried, and a sixperson jury found the defendant guilty of the lesser-included charge of second-degree battery. On July 3, 2002, the defendant filed an oral motion for appeal, which the trial court granted.
ERRORS PATENT
A review of the record revealed no errors patent.
DISCUSSION
ASSIGNMENT OF ERROR NUMBER 1
The defendant complains the evidence was insufficient to support his conviction of second-degree battery and the state failed to negate self-defense. When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), State v. Rosiere, 488 So.2d 965 (La.1986); State v. Heck, 560 So.2d 611 (La.App. 4 Cir.1990). The reviewing court must consider the record as a whole and not just the evidence most favorable to the prosecution; and, if rational triers of fact could not disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La. 1988), State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991).
In a second-degree battery conviction, the State is required to prove the offender committed a battery without the consent of the victim and that he intentionally inflicted serious bodily injury. La. R.S. 14:34.1. In second-degree battery cases the offense requires proof of a specific intent to inflict "serious bodily harm." State v. Welch, 615 So.2d 300, 302 (La. 1993) (citing State v. Fuller, 414 So.2d *89 306 (La.1982)). Serious bodily injury is defined as injury, which involves unconsciousness, extreme physical pain, or protracted and obvious disfigurement or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death. La. R.S. 14:34.1. Specific intent is defined as that state of mind, which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Therefore, the elements of second-degree battery are: (1) the intentional use of force or violence upon the person of another, (2) without the consent of the victim, (3) when the offender has the specific intent to inflict serious bodily injury. State v. Legendre, 522 So.2d 1249, 1251 (La.App. 4 Cir. 1988).
The term "extreme physical pain" as used in the statute refers to "a condition which most people of common intelligence can understand; it is considered subjective in nature and susceptible to interpretation." Legendre, 522 So.2d at 1250. (quoting State v. Thompson, 399 So.2d 1161, 1168 (La.1981)).
In the instant case, Officer Hynes testified that the defendant followed the victim from the gas station to the exit ramp at Downman and Chef Menteur Highway. Furthermore, the results of Officer Hynes investigation led him to conclude that the defendant had thrown a cinder block or some sort of dense object into the rear windshield of the victim's truck. Officer Ray Byrd testified that the dispatcher received numerous calls from concerned onlookers, who witnessed the defendant striking the victim in the head repeatedly with a 2x4 board, and then proceeded to run down the Downman exit ramp. Dr. Lola Dunbar, the victim's attending physician, testified that the victim arrived at the emergency room with serious injuries as a result of blunt force trauma to the head. In viewing the evidence in the light most favorable to the prosecution, this court finds the record supports the defendant's conviction.
The defendant further complains the state failed to negate self-defense. The Fifth Circuit in State v. Barnes, 491 So.2d 42 (La.App. 5 Cir.1986), citing State v. Freeman, 427 So.2d 1161 (La.1983) found:
[I]n the non-homicide situation, the defense of self-defense requires a dual inquiry; an objective inquiry into whether the force used was reasonable under the circumstances; a subjective inquiry into whether the force was apparently necessary. Thus, since the subjective inquiry is required, it is the defendant who would be in a better position to know those subjective facts. In fairness to the state this court believes that it would be placing an onerous burden on the state to disprove subjective influences on the defendant as it relates to self-defense or defense of another especially since the defendant has these facts at his disposal to produce to the court. (Citations omitted)
La. R.S. 14:21 provides:
A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.
The evidence presented by the state clearly showed the defendant was the aggressor. The defendant characterizes the victim as a fleeing thief, and himself as the actual victim. However, the defendant could have obtained the victim's license plate number and called the police. Instead, the defendant pursued the victim *90 with a vengeance, and he did not stop until he caught him, and beat him with a 2x4 into unconsciousness. The jury heard and rejected the defendant's claim that his actions were in self-defense. The reviewing court must defer to the trier of fact's rational credibility calls, evidence weighing and inference drawing. State v. Mussall, 523 So.2d 1305 (La.1988). It is not the function of the appellate court to assess credibility or re-weigh evidence. State v. Marcantel, 00-1629 (La.4/3/02), 815 So.2d 50. Therefore, this court finds the assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER 2
The defendant complains his sentence is excessive.
Although a sentence is within the statutory limits, the sentence may still violate a defendant's constitutional right against excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.1979). A sentence is unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the needless and purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Lobato, 603 So.2d 739 (La.1992).
Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La. 1983).
If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Quebedeaux, 424 So.2d 1009 (La.1982).
The trial judge is given wide discretion in imposing a sentence, and a sentence imposed within the statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Walker, 96-112 (La.App. 3 Cir. 6/5/96), 677 So.2d 532, 535, citing State v. Howard, 414 So.2d 1210 (La.1982).
La. R.S. 15:529.1(A)(2)(a) provides:
(a) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction.
The sentencing range for the defendant as a second felony offender was two and one-half years to ten years. The defendant's sentence was the minimum he could possibly receive. The trial court considered the fact that the defendant was the primary support for his eight minor children. Additionally, the defendant has failed to prove the trial judge abused the liberal discretion allowed in sentencing.
CONCLUSION
The defendant's conviction and sentence are affirmed.
AFFIRMED.